Heidi G. Goebel, 10343
GOEBEL ANDERSON PC
405 South Main Street, Suite 200
Salt Lake City, Utah 84111
Telephone: (801) 441-9393
HGoebel@GAPClaw.com
*Attorneys for Plaintiff*

## UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH

| | |
|---|---|
| PATRICK LENTSCH, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>VISTA OUTDOOR INC., MARK W. DEYOUNG, STEPHEN M. NOLAN, and KELLY T. GRINDLE,<br><br>Defendants. | **CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>**JURY TRIAL DEMANDED**<br><br>Case No.:<br><br>Judge: |

Plaintiff Patrick Lentsch ("Plaintiff"), by and through his attorneys, alleges the following

upon information and belief, except as to those allegations concerning Plaintiff, which are alleged

upon personal knowledge. Plaintiff's information and belief is based upon, among other things,

his counsel's investigation, which includes without limitation: (a) review and analysis of

regulatory filings made by Vista Outdoor Inc., ("Vista" or the "Company"), with the United States

("U.S.") Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases

1

and media reports issued by and disseminated by Vista; and (c) review of other publicly available information concerning Vista.

## NATURE OF THE ACTION AND OVERVIEW

1.      This is a class action on behalf of persons and entities that acquired Vista's securities between August 11, 2016, and January 13, 2017, inclusive (the "Class Period"), against the Defendants,[1] seeking to pursue remedies under the Securities Exchange Act of 1934 (the "Exchange Act").

2.      Vista is purportedly a designer, manufacturer and marketer of consumer products in the outdoor sports and recreation markets.  Vista operates in two segments, Shooting Sports and Outdoor Products.

3.      Throughout the Class Period, Defendants made materially false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants failed to disclose: (1) that Vista was experiencing an acceleration in the softening of the retail environment and an acceleration in its own promotional activity; (2) that, as such, Vista was experiencing both revenue and gross margin declines; (3) that, as a result of the foregoing, the Company would have to begin the impairment assessment for its Outdoor Products segment's reporting units in the third quarter of 2017, rather than with the preparation of the Company's fiscal year 2017 ("FY17") annual financial statements;

---

[1] "Defendants" refers to Vista, Mark W. DeYoung, Stephen M. Nolan, and Kelly T. Grindle Daviscollectively.

(4) that, as a result, the Company would have to recognize an impairment charge in the range of $400 million to $450 million; and (5) that, as a result of the foregoing, Defendants' statements about Vista's business, operations, and prospects, were false and misleading and/or lacked a reasonable basis.

4.      On January 11, 2017, the Company issued a press release entitled "Vista Outdoor Announces Expected Non-Cash Intangible Asset Impairment Charge." Therein, the Company disclosed that it expected to record a material, non-cash intangible asset impairment charge in its Hunting and Shooting Accessories reporting unit (archery/hunting accessories, golf, optics, shooting accessories, and tactical products) in the third quarter of its FY17. The Company further stated that, in its assessment, a triggering event for the Company's Outdoor Products segment occurred during the third quarter of FY17 due to "an acceleration of the trends seen during the first and second quarters, which included a softening retail environment and increased promotional activity" and that these factors "required the Company to begin the impairment assessment for that segment's reporting units at that time, rather than waiting for the normal process that would ordinarily be completed in conjunction with the preparation of the Company's FY17 annual financial statements." The Company also stated that Vista "experienced both revenue and gross margin declines that were driven by a variety of factors," including "a challenging retail environment that resulted in a deeper discounting of its accessories products, as well as a shift in the consumers' share of wallet from hunting and shooting accessories products to certain firearms platforms outside the Company's firearms offerings" and that "[t]hese sales and gross margin trends accelerated during the Company's recently completed third quarter to the point where this

3

impairment charge is necessary to comply with accounting standards." Finally, the Company stated that "preliminary analysis indicates the impairment charge will be in the range of $400 million to $450 million."

5.      On this news, shares of Vista fell $8.21 per share, or 21.7%, to close at $29.58 per share on January 12, 2017, on unusually heavy trading volume.

6.      Then, on January 13, 2017, Vista disclosed that Kelly Grindle was being replaced by Dave Allen as President of the Company's Outdoor Products segment.

7.      On this news, shares of Vista fell $0.88 per share, to close at $28.70 per share on January 13, 2017, on unusually heavy trading volume.

8.      As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

9.      The claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

10.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act (15 U.S.C. § 78aa).

11.      Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)). Substantial acts in furtherance of the alleged fraud or the effects of the fraud have occurred in this Judicial District. Many of the acts charged herein,

4

including the dissemination of materially false and/or misleading information, occurred in substantial part in this Judicial District.

12.     In connection with the acts, transactions, and conduct alleged herein, Defendants directly and indirectly used the means and instrumentalities of interstate commerce, including the United States mail, interstate telephone communications, and the facilities of a national securities exchange.

**PARTIES**

13.     Plaintiff Patrick Lentsch, as set forth in the accompanying certification, incorporated by reference herein, purchased Vista common stock during the Class Period, and suffered damages as a result of the federal securities law violations and false and/or misleading statements and/or material omissions alleged herein.

14.     Defendant Vista Outdoor Inc. is a Delaware corporation headquartered in Farmington, Utah.  Vista's common stock trades on the New York Stock Exchange ("NYSE") under the symbol "VSTO."

15.     Defendant Mark W. DeYoung ("DeYoung") was, at all relevant times, the Chairman and Chief Executive Officer ("CEO") of Vista.

16.     Defendant Stephen M. Nolan ("Nolan") was, at all relevant times, the Senior Vice President and Chief Financial Officer ("CFO") of Vista.

17.     Defendant Kelly T. Grindle ("Grindle") was, at all relevant times, the President of the Outdoor Products segment of Vista until his announced departure on January 13, 2017.

18.     Defendants DeYoung, Nolan, and Grindle (collectively the "Individual Defendants"), because of their positions with the Company, possessed the power and authority to control the contents of Vista's reports to the SEC, press releases and presentations to securities analysts, money and portfolio managers and institutional investors, *i.e.*, the market. The Individual Defendants were provided with copies of the Company's reports and press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected. Because of their positions and access to material non-public information available to them, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public, and that the positive representations which were being made were then materially false and/or misleading. The Individual Defendants are liable for the false statements pleaded herein.

## SUBSTANTIVE ALLEGATIONS

### Background

19.     Vista is purportedly a designer, manufacturer and marketer of consumer products in the outdoor sports and recreation markets. Vista operates in two segments, Shooting Sports and Outdoor Products.

### Materially False and Misleading
### Statements Issued During the Class Period

20.     The Class Period begins on August 11, 2016, on that day the Company issued a press release entitled "Vista Outdoor Announces FY17 First Quarter Operating Results Vista Outdoor Reaffirms FY17 Financial Guidance." Therein, the Company, in relevant part, stated:

6

**Farmington, Utah, August 11, 2016** — Vista Outdoor Inc. (NYSE: VSTO) today reported operating results for the first quarter of its Fiscal Year 2017 (FY17), which ended on July 3, 2016.

"Vista Outdoor continues to execute on its growth strategy," said Vista Outdoor Chairman and Chief Executive Officer Mark DeYoung. "Early in the quarter, Vista Outdoor completed the acquisition of Action Sports, which has enhanced our market offerings in cycling, snow sports and powersports, and the integration is on track. Including recent acquisitions, both sales and gross profit increased 23 percent over the prior-year period. We, like other consumer products companies, experienced a soft retail environment in the first quarter. Additionally, we were impacted by a shift in consumer spending from accessories to firearms platforms outside our portfolio, and the timing of international orders from the first quarter to later in our fiscal year. We expect a recovery in the second half of the fiscal year due to sell through of new products, increased international sales, the continued improvement in the retail environment, and seasonal upside in the shooting sports market."

For the first quarter ended July 3, 2016:

- Sales were $630 million, up 23 percent from the prior-year quarter, including $134 million from the recent acquisitions, and down 4 percent on an organic basis.

- Gross profit was $171 million, up 23 percent from the prior-year quarter. The increase includes $42 million of gross profit from the recent acquisitions, partially offset by a 7 percent decrease in organic gross profit.

- Operating expenses were $112 million, compared to $80 million in the prior-year quarter. The increase primarily reflects additional expenses generated by the acquisitions, as well as previously announced ongoing investments in SG&A and R&D.

- The tax rate for the quarter was 38.2 percent down from 39.9 percent in the prior-year quarter. The decrease was primarily caused by a true-up of assets in the prior year, partially offset by non-deductible acquisition costs in the current quarter.

- Fully diluted earnings per share (EPS) was $0.48, compared to $0.53 in the prior-year quarter. Adjusted EPS was $0.48, compared to $0.54 in the prior-year quarter.

- Cash flow use for operating activities was $22 million compared to a use of $42 million in the prior-year period. Year-to-date free cash flow use was $41 million, compared to a use of $52 million in the prior-year period.

- The company repurchased approximately 462,000 shares for $22 million. Since July 3, 2016, Vista Outdoor repurchased approximately 159,000 additional shares for $8 million.

"With expected improved performance in the second half of the year, the company reaffirms its financial guidance in fiscal year 2017, as we anticipate an improved retail landscape and a return to spending on hunting and shooting accessories to complement the growing firearms installed base," said Vista Outdoor Chief Financial Officer Stephen Nolan. "We will also continue to leverage the strength of our portfolio, including new capabilities and talent from recent acquisitions, to improve performance and achieve execution excellence."

**Reaffirmed Outlook for Fiscal Year 2017**

Vista Outdoor reaffirms FY17 financial guidance:

- Sales in a range of $2.72 billion to $2.78 billion.
- Interest expense of approximately $45 million.
- Tax rate of approximately 37 percent.
- Adjusted EPS in a range of $2.65 to $2.85.
- Capital expenditures of approximately $90 million.
- Free cash flow in a range of $130 million to $160 million.

The guidance above does not include the impact of any future strategic acquisitions, divestitures, investments, business combinations or other significant transactions, nor the impact of contingent consideration revaluation, transition expenses or inventory step-ups for already-completed acquisitions.

21.   On August 12, 2016, the Company filed its Quarterly Report on Form 10-Q with

the SEC for the quarterly period ended July 3, 2016. The 10-Q was signed by Defendant Nolan,

and reaffirmed the financial results announced in the press release published on August 11, 2016.

22.     On November 10, 2016, the Company issued a press release entitled "Vista Outdoor

Announces FY17 Second Quarter Operating Results." Therein, the Company, in relevant part,

stated:

> Farmington, Utah, November 10, 2016 — Vista Outdoor Inc. (NYSE: VSTO)
> today reported operating results for the second quarter of its Fiscal Year 2017
> (FY17), which ended on October 2, 2016.
>
> "Vista Outdoor delivered solid second quarter results, including an increase of 24
> percent in both sales and gross profit over the prior-year period as a result of
> acquisitions and strong performance in our Shooting Sports segment," said Vista
> Outdoor Chairman and Chief Executive Officer Mark DeYoung. "Year over year,
> our Outdoor Products and Shooting Sports segments delivered organic sales growth
> for the quarter. During the quarter, we also welcomed Camp Chef to the Vista
> Outdoor family of brands. Camp Chef is a leading provider of outdoor cooking
> solutions and provides Vista Outdoor with a foothold in one of the camping
> market's most attractive categories."
>
> For the second quarter ended October 2, 2016:
>
> - Sales were $684 million, up 24 percent from the prior-year quarter,
>   including $106 million from the recent acquisitions, and up 5 percent on an
>   organic basis.
>
> - Gross profit was $185 million, up 24 percent from the prior-year quarter.
>   The increase includes $32 million of gross profit from the recent
>   acquisitions, and a 3 percent increase in organic gross profit.
>
> - Operating expenses were $81 million, compared to $88 million in the prior-
>   year quarter. The decrease primarily reflects an acquisition claim settlement
>   gain related to the Bushnell acquisition, partially offset by additional
>   expenses generated by the acquisitions, as well as previously announced
>   ongoing investments in selling, marketing and R&D activities.
>
> - The tax rate for the quarter was 22.4 percent down from 39.7 percent in the
>   prior-year quarter. The decrease was primarily caused by the nontaxable
>   treatment of the legal claim settlement noted above and settlement of the
>   IRS examination of the fiscal 2013 and 2014 tax returns in the current
>   quarter.

- Fully diluted earnings per share (EPS) was $1.22, compared to $0.52 in the prior-year quarter. Adjusted EPS was $0.74, compared to $0.63 in the prior-year quarter.

- Cash flow provided by operating activities was $10 million compared to $17 million in the prior-year period. Year-to-date free cash flow use was $48 million, compared to free cash flow generation of $5 million in the prior-year period.

- The company repurchased approximately 1,074,000 shares for $44 million. Since October 2, 2016, Vista Outdoor repurchased approximately 724,000 additional shares for $28 million.

"We remain confident in our strategy, and we are reaffirming our FY17 guidance," said Vista Outdoor Chief Financial Officer Stephen Nolan. "Our second quarter results have improved over our reported first-quarter levels. We saw increased promotional activity in the Outdoor Products segment and, due to the ongoing challenging retail environment, this will likely continue in the second half of the fiscal year. The promotional activity also resulted in some acceleration of revenue from the third quarter into the second quarter."

**Reaffirmed Outlook for Fiscal Year 2017**

Vista Outdoor reaffirms FY17 financial guidance:

- Sales in a range of $2.72 billion to $2.78 billion.
- Interest expense of approximately $45 million.
- Tax rate of approximately 37 percent.
- Adjusted EPS in a range of $2.65 to $2.85.
- Capital expenditures of approximately $90 million.
- Free cash flow in a range of $130 million to $160 million.

The guidance above includes the previously announced Camp Chef acquisition but does not include the impact of any future strategic acquisitions, divestitures, investments, business combinations or other significant transactions, nor the impact of contingent consideration revaluation, transition expenses, the acquisition legal claim settlement or inventory step-ups for already-completed acquisitions.

23. On the same day, November 10, 2016, the Company filed its Quarterly Report on Form 10-Q with the SEC for the quarterly period ended October 2, 2016. The 10-Q was signed by Defendant Nolan, and reaffirmed the financial results announced in the press release published the same day.

24. The above statements identified in ¶¶20-23 were materially false and/or misleading, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants failed to disclose: (1) that Vista was experiencing an acceleration in the softening of the retail environment and an acceleration in its own promotional activity; (2) that, as such, Vista was experiencing both revenue and gross margin declines; (3) that, as a result of the foregoing, the Company would have to begin the impairment assessment for its Outdoor Products segment's reporting units in the third quarter of 2017, rather than with the preparation of the Company's FY17 annual financial statements; (4) that, as a result, the Company would have to recognize an impairment charge in the range of $400 million to $450 million; and (5) that, as a result of the foregoing, Defendants' statements about Vista's business, operations, and prospects, were false and misleading and/or lacked a reasonable basis.

## Disclosures at the End of the Class Period

25. On January 11, 2017, the Company issued a press release entitled "Vista Outdoor Announces Expected Non-Cash Intangible Asset Impairment Charge." Therein, the Company disclosed:

**Farmington, Utah**, January 11, 2017 - Vista Outdoor Inc. ("Vista Outdoor" or the "Company") (NYSE: VSTO), announced today that it expects to record a material, non-cash intangible asset impairment charge in its Hunting and Shooting

11

Accessories reporting unit (archery/hunting accessories, golf, optics, shooting accessories, and tactical products) in the third quarter of its Fiscal Year 2017 (FY17). The Company does not expect the impairment charge to have any impact on future operations, affect its liquidity, affect cash flows from operating activities, or affect compliance with the financial covenants set forth in its debt instruments.

In accordance with Accounting Standards Codification (ASC) 350 "Intangibles Goodwill and Other," the Company is required to test its goodwill and other indefinite-lived intangible assets for impairment annually or when a triggering event has occurred that would indicate that it is more likely than not that the fair value of the reporting unit is less than the book value, including goodwill and intangibles. In Vista Outdoor's assessment, a triggering event for the Company's Outdoor Products segment occurred during the third quarter of FY17 due to an acceleration of the trends seen during the first and second quarters, which included a softening retail environment and increased promotional activity. These factors required the Company to begin the impairment assessment for that segment's reporting units at that time, rather than waiting for the normal process that would ordinarily be completed in conjunction with the preparation of the Company's FY17 annual financial statements. Vista Outdoor's Shooting Sports segment will be tested during the normal process and management is confident there will not be an impairment in the segment's Ammunition and Firearms reporting units.

Based on the initial assessment conducted using a measurement date of November 28, 2016, there was no indication of any impairment of Vista Outdoor's intangible assets associated with either the Company's Outdoor Recreation (camping, hydration, and watersports) or Sports Protection (cycling and winter sports accessories) reporting units; however, the assessment did indicate that the above mentioned impairment may have occurred in the Company's Hunting and Shooting Accessories reporting unit. While the analysis to finalize the actual amount of the impairment charge has not yet been completed, Vista Outdoor believes that there is sufficient evidence for the Company to conclude that this impairment occurred.

During the Company's FY17 second quarter earnings call and its subsequent 2016 Investor Day, Vista Outdoor disclosed it has experienced both revenue and gross margin declines that were driven by a variety of factors. These factors include a challenging retail environment that resulted in a deeper discounting of its accessories products, as well as a shift in the consumers' share of wallet from hunting and shooting accessories products to certain firearms platforms outside the Company's firearms offerings. These sales and gross margin trends accelerated during the Company's recently completed third quarter to the point where this impairment charge is necessary to comply with accounting standards. Although

Vista Outdoor is in the process of finalizing the actual amount of the impairment, the Company's preliminary analysis indicates the impairment charge will be in the range of $400 million to $450 million. The Company expects that the analysis supporting the impairment will be completed in time to allow for its recording in the third quarter of FY17.

"We believe this non-cash impairment charge is a result of challenging market conditions, which worsened as the third quarter progressed, and required discounting of product for Vista Outdoor to remain competitive," said Vista Outdoor Chief Financial Officer Stephen Nolan. "We still expect long-term growth in all of our reporting units, including Hunting and Shooting Accessories. We remain committed to, and confident in, our growth strategy and we are optimistic about our businesses and our future opportunities."

Due to the ongoing analysis, management will be unable to provide further details on the impairment charge, the impact of current market conditions on business performance, and annual guidance until the Company's regularly scheduled third quarter earnings call on February 9, 2017.

26.     On this news, shares of Vista fell $8.21 per share, or 21.7%, to close at $29.58 per

share on January 12, 2017, on unusually heavy trading volume.

27.     Then, on January 13, 2017, Vista disclosed that Kelly Grindle was being replaced

by Dave Allen as President of the Company's Outdoor Products segment:

**Farmington, Utah, January 13, 2017** – Vista Outdoor Inc. (NYSE:VSTO), a leading global designer, manufacturer and marketer of consumer products in the outdoor sports and recreation markets, has named Dave Allen as President of its Outdoor Products segment, which includes Hunting and Shooting Accessories, Outdoor Recreation, and Sports Protection. As segment president, Allen will have responsibility for segment-level financial performance, strategic planning, innovation and new products, brand management and marketing, product line management, sourcing and supply chain management, capital expenditures and R&D investment and returns, and talent management.

Allen joined Vista Outdoor as Senior Vice President (SVP), Sales in 2016. He has over 23 years of experience in consumer products and has strong experience in the outdoor industry. Allen previously served as the President of Coleman USA for the

Jarden Corporation, and he has held domestic and international leadership positions with Alberto Culver and Unilever.

"Dave's strategic leadership capabilities, experience leading a large P&L, and a solid track record in both sales and marketing, have prepared him for this role," said Vista Outdoor Chairman and CEO Mark DeYoung. "Dave's performance, skills and relationships have established him as a well-respected leader within Vista Outdoor and the outdoor recreation industry. Given his demonstrated focus on strategic planning, accountability, delivering results, and creating shareholder value, he is the right person to lead the Outdoor Products segment and deliver improved performance and future growth."

Allen replaces Kelly Grindle, who has left Vista Outdoor to pursue other opportunities.

"I want to thank Kelly for his efforts and wish him well," said DeYoung.

28.     On this news, shares of Vista fell $0.88 per share, to close at $28.70 per share on

January 13, 2017, on unusually heavy trading volume.

## CLASS ACTION ALLEGATIONS

29.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class, consisting of all persons and entities that acquired Vista's securities between August 11, 2016, and January 13, 2017, inclusive, and who were damaged thereby (the "Class"). Excluded from the Class are Defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendants have or had a controlling interest.

30.     The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Vista's common stock actively traded on the NYSE.

14

While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are at least hundreds or thousands of members in the proposed Class. Millions of Vista shares were traded publicly during the Class Period on the NYSE. As of November 7, 2016, Vista had 58,809,385 shares of common stock outstanding. Record owners and other members of the Class may be identified from records maintained by Vista or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

31.    Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

32.    Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

33.    Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

(a)    whether the federal securities laws were violated by Defendants' acts as alleged herein;

(b)    whether statements made by Defendants to the investing public during the Class Period omitted and/or misrepresented material facts about the business, operations, and prospects of Vista; and

(c)    to what extent the members of the Class have sustained damages and the proper measure of damages.

34.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation makes it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

## UNDISCLOSED ADVERSE FACTS

35.    The market for Vista's securities was open, well-developed and efficient at all relevant times. As a result of these materially false and/or misleading statements, and/or failures to disclose, Vista's securities traded at artificially inflated prices during the Class Period. Plaintiff and other members of the Class purchased or otherwise acquired Vista's securities relying upon the integrity of the market price of the Company's securities and market information relating to Vista, and have been damaged thereby.

36.    During the Class Period, Defendants materially misled the investing public, thereby inflating the price of Vista's securities, by publicly issuing false and/or misleading statements and/or omitting to disclose material facts necessary to make Defendants' statements, as set forth herein, not false and/or misleading. The statements and omissions were materially false and/or misleading because they failed to disclose material adverse information and/or misrepresented the truth about Vista's business, operations, and prospects as alleged herein.

16

37.     At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused or were a substantial contributing cause of the damages sustained by Plaintiff and other members of the Class. As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about Vista's financial well-being and prospects. These material misstatements and/or omissions had the cause and effect of creating in the market an unrealistically positive assessment of the Company and its financial well-being and prospects, thus causing the Company's securities to be overvalued and artificially inflated at all relevant times. Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at artificially inflated prices, thus causing the damages complained of herein when the truth was revealed.

## LOSS CAUSATION

38.     Defendants' wrongful conduct, as alleged herein, directly and proximately caused the economic loss suffered by Plaintiff and the Class.

39.     During the Class Period, Plaintiff and the Class purchased Vista's securities at artificially inflated prices and were damaged thereby. The price of the Company's securities significantly declined when the misrepresentations made to the market, and/or the information alleged herein to have been concealed from the market, and/or the effects thereof, were revealed, causing investors' losses.

17

## SCIENTER ALLEGATIONS

40.     As alleged herein, Defendants acted with scienter since Defendants knew that the
public documents and statements issued or disseminated in the name of the Company were
materially false and/or misleading; knew that such statements or documents would be issued or
disseminated to the investing public; and knowingly and substantially participated or acquiesced
in the issuance or dissemination of such statements or documents as primary violations of the
federal securities laws. As set forth elsewhere herein in detail, the Individual Defendants, by virtue
of their receipt of information reflecting the true facts regarding Vista, their control over, and/or
receipt and/or modification of Vista's allegedly materially misleading misstatements and/or their
associations with the Company which made them privy to confidential proprietary information
concerning Vista, participated in the fraudulent scheme alleged herein.

## APPLICABILITY OF PRESUMPTION OF RELIANCE
## (FRAUD-ON-THE-MARKET DOCTRINE)

41.     The market for Vista's securities was open, well-developed and efficient at all
relevant times. As a result of the materially false and/or misleading statements and/or failures to
disclose, Vista's securities traded at artificially inflated prices during the Class Period. On August
11, 2016, the Company's stock price closed at a Class Period high of $42.75 per share. Plaintiff
and other members of the Class purchased or otherwise acquired the Company's securities relying
upon the integrity of the market price of Vista's securities and market information relating to Vista,
and have been damaged thereby.

18

42.     During the Class Period, the artificial inflation of Vista's stock was caused by the material misrepresentations and/or omissions particularized in this Complaint causing the damages sustained by Plaintiff and other members of the Class. As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about Vista's business, prospects, and operations. These material misstatements and/or omissions created an unrealistically positive assessment of Vista and its business, operations, and prospects, thus causing the price of the Company's securities to be artificially inflated at all relevant times, and when disclosed, negatively affected the value of the Company stock. Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at such artificially inflated prices, and each of them has been damaged as a result.

43.     At all relevant times, the market for Vista's securities was an efficient market for the following reasons, among others:

(a)     Vista stock met the requirements for listing, and was listed and actively traded on the NYSE, a highly efficient and automated market;

(b)     As a regulated issuer, Vista filed periodic public reports with the SEC and/or the NYSE;

(c)     Vista regularly communicated with public investors via established market communication mechanisms, including through regular dissemination of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and/or

19

(d)     Vista was followed by securities analysts employed by brokerage firms who wrote reports about the Company, and these reports were distributed to the sales force and certain customers of their respective brokerage firms. Each of these reports was publicly available and entered the public marketplace.

44.     As a result of the foregoing, the market for Vista's securities promptly digested current information regarding Vista from all publicly available sources and reflected such information in Vista's stock price. Under these circumstances, all purchasers of Vista's securities during the Class Period suffered similar injury through their purchase of Vista's securities at artificially inflated prices and a presumption of reliance applies.

45.     A Class-wide presumption of reliance is also appropriate in this action under the Supreme Court's holding in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972), because the Class's claims are, in large part, grounded on Defendants' material misstatements and/or omissions. Because this action involves Defendants' failure to disclose material adverse information regarding the Company's business operations and financial prospects—information that Defendants were obligated to disclose—positive proof of reliance is not a prerequisite to recovery. All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in making investment decisions. Given the importance of the Class Period material misstatements and omissions set forth above, that requirement is satisfied here.

## NO SAFE HARBOR

46.    The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint. The statements alleged to be false and misleading herein all relate to then-existing facts and conditions. In addition, to the extent certain of the statements alleged to be false may be characterized as forward looking, they were not identified as "forward-looking statements" when made and there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. In the alternative, to the extent that the statutory safe harbor is determined to apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the speaker had actual knowledge that the forward-looking statement was materially false or misleading, and/or the forward-looking statement was authorized or approved by an executive officer of Vista who knew that the statement was false when made.

## FIRST CLAIM
### Violation of Section 10(b) of The Exchange Act and
### Rule 10b-5 Promulgated Thereunder
### Against All Defendants

47.    Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

48.    During the Class Period, Defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (i) deceive the investing

21

public, including Plaintiff and other Class members, as alleged herein; and (ii) cause Plaintiff and other members of the Class to purchase Vista's securities at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each defendant, took the actions set forth herein.

49.     Defendants (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices for Vista's securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5. All Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

50.     Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about Vista's financial well-being and prospects, as specified herein.

51.     Defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of Vista's value and performance and continued substantial growth, which included the making of, or the participation in the making of, untrue statements of material facts and/or omitting to state material facts necessary in order to make the statements made about Vista and its business operations and future prospects in light of

22

the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities during the Class Period.

52. Each of the Individual Defendants' primary liability and controlling person liability arises from the following facts: (i) the Individual Defendants were high-level executives and/or directors at the Company during the Class Period and members of the Company's management team or had control thereof; (ii) each of these defendants, by virtue of their responsibilities and activities as a senior officer and/or director of the Company, was privy to and participated in the creation, development and reporting of the Company's internal budgets, plans, projections and/or reports; (iii) each of these defendants enjoyed significant personal contact and familiarity with the other defendants and was advised of, and had access to, other members of the Company's management team, internal reports and other data and information about the Company's finances, operations, and sales at all relevant times; and (iv) each of these defendants was aware of the Company's dissemination of information to the investing public which they knew and/or recklessly disregarded was materially false and misleading.

53. Defendants had actual knowledge of the misrepresentations and/or omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing Vista's financial well-being and prospects from the investing public and supporting the artificially inflated price of its securities. As demonstrated by

Defendants' overstatements and/or misstatements of the Company's business, operations, financial well-being, and prospects throughout the Class Period, Defendants, if they did not have actual knowledge of the misrepresentations and/or omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

54.     As a result of the dissemination of the materially false and/or misleading information and/or failure to disclose material facts, as set forth above, the market price of Vista's securities was artificially inflated during the Class Period. In ignorance of the fact that market prices of the Company's securities were artificially inflated, and relying directly or indirectly on the false and misleading statements made by Defendants, or upon the integrity of the market in which the securities trades, and/or in the absence of material adverse information that was known to or recklessly disregarded by Defendants, but not disclosed in public statements by Defendants during the Class Period, Plaintiff and the other members of the Class acquired Vista's securities during the Class Period at artificially high prices and were damaged thereby.

55.     At the time of said misrepresentations and/or omissions, Plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true. Had Plaintiff and the other members of the Class and the marketplace known the truth regarding the problems that Vista was experiencing, which were not disclosed by Defendants, Plaintiff and other members of the Class would not have purchased or otherwise acquired their Vista securities, or, if they had acquired such securities during the Class Period, they would not have done so at the artificially inflated prices which they paid.

56.     By virtue of the foregoing, Defendants violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

57.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's securities during the Class Period.

## SECOND CLAIM
### Violation of Section 20(a) of The Exchange Act
### Against the Individual Defendants

58.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

59.     Individual Defendants acted as controlling persons of Vista within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their high-level positions and their ownership and contractual rights, participation in, and/or awareness of the Company's operations and intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public, Individual Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading. Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings, and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

60.      In particular, Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

61.      As set forth above, Vista and Individual Defendants each violated Section 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint. By virtue of their position as controlling persons, Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's securities during the Class Period.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

(a)      Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure;

(b)      Awarding compensatory damages in favor of Plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

(c)      Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d)      Such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

DATED this 25th day of January, 2017.

GOEBEL ANDERSON PC

/s/ Heidi G. Goebel
Heidi G. Goebel
*Attorneys for Plaintiff*

## SWORN CERTIFICATION OF PLAINTIFF

### VISTA OUTDOOR INC. SECURITIES LITIGATION

I, Patrick Lentsch  individually, and/or in my capacity as trustee and/or principal for accounts listed on Schedule A, certify that:

1.     I have reviewed the Complaint and authorize its filing and/or the filing of a Lead Plaintiff motion on my behalf.

2.     I did not purchase Vista Outdoor Inc. the security that is the subject of this action, at the direction of plaintiff's counsel or in order to participate in any private action arising under this title.

3.     I am willing to serve as a representative party on behalf of a class and will testify at deposition and trial, if necessary.

4.     My transactions in Vista Outdoor Inc. during the Class Period set forth in the Complaint are as follows:

(See attached transactions)

5.     I have not served as a representative party on behalf of a class under this title during the last three years, except for the following:

6.     I will not accept any payment for serving as a representative party, except to receive my pro rata share of any recovery or as ordered or approved by the court, including the award to a representative plaintiff of reasonable costs and expenses (including lost wages) directly relating to the representation of the class.

I declare under penalty of perjury that the foregoing are true and correct statements.

1/19/2017

Date

Patrick Lentsch

341986.1

**Patrick Lentsch's Transactions in**
**Vista Outdoor, Inc. (VSTO)**

| Date | Transaction Type | Quantity | Unit Price |
|------|------------------|----------|------------|
| 01/13/2017 | Bought | 2,000 | $28.9200 |
| 01/13/2017 | Bought | 1,000 | $28.4400 |