BETSY C. MANIFOLD (*pro hac vice*)
manifold@whafh.com
**WOLF HALDENSTEIN ADLER**
    **FREEMAN & HERZ LLP**
750 B Street, Suite 2770
San Diego, CA 92101
Telephone:  619/239-4599
Facsimile:  619/234-4599

GREGORY M. NESPOLE (*pro hac vice*)
REGINA M. CALCATERRA (*pro hac vice*)
ANITA B. KARTALOPOULOS (*pro hac vice*)
CORREY A. KAMIN (*pro hac vice*)
**WOLF HALDENSTEIN ADLER**
    **FREEMAN & HERZ LLP**
270 Madison Avenue
New York, NY 10016
Telephone:  212/545-4600
Facsimile:  212/686-0114

*Counsel for Lead Plaintiff and*
*Proposed Class Counsel*

**ANDERSON &**
**KARRENBERG**
Heather M. Sneddon (9250)
Jared D. Scott (15066)
50 West Broadway, #700
Salt Lake City, UT 84101-2035
Telephone:  801/534-1700
Facsimile:  801/364-7697
hsneddon@aklawfirm.com
jscott@aklawfirm.com

*Liaison Counsel for Lead Plaintiff*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH

|  |  |
|---|---|
| **PATRICK LENTSCH**, On Behalf of Himself and All Others Similarly Situated,<br><br>    Plaintiff,<br><br> v.<br><br>**VISTA OUTDOOR INC., MARK W. DEYOUNG, STEPHEN M. NOLAN,** and **KELLY T. GRINDLE**,<br><br>    Defendants. | Case No. 1:17-cv-00012-RJS-EJF<br><br>**LEAD PLAINTIFF'S UNOPPOSED MOTION PRELIMINARILY APPROVING CLASS ACTION SETTLEMENT, APPROVING FORM AND MANNER OF NOTICE, AND SETTING DATE FOR HEARING ON FINAL APPROVAL OF SETTLEMENT AND SUPPORTING MEMORANDUM**<br><br>JUDGE:  Hon. Dale A. Kimball |

# TABLE OF CONTENTS

Page

I.   INTRODUCTION ........................................................................................................1

II.  BACKGROUND ........................................................................................................2

     A.   The Action ......................................................................................................2

     B.   Negotiations ....................................................................................................3

     C.   The Settlement ................................................................................................4

          1.   The Settlement Class...............................................................................4

          2.   Settlement Amount ..................................................................................5

          3.   Class Representative Service Awards .......................................................5

          4.   Attorneys' Fees and Costs........................................................................5

III. ARGUMENT .............................................................................................................6

     A.   Preliminary Approval of the Proposed Settlement is Merited ................................6

          1.   The Standard for Preliminary Approval ....................................................6

     B.   The Settlement is Within the Range of Reasonableness........................................6

          1.   The Settlement Was Fairly and Honestly Negotiated.................................7

          2.   Serious Questions of Fact and Law Exist ..................................................8

          3.   The Value of a Guaranteed Recovery Outweighs the Possibility of
               Relief after Protracted and Expensive Litigation.......................................10

          4.   The Parties Believe that the Proposed Settlement is Fair, Adequate,
               and Reasonable ........................................................................................11

IV.  THE SETTLEMENT CLASS SHOULD BE PRELIMINARILY CERTIFIED...............11

     A.   The Proposed Settlement Class Meets the Requirements of Rule 23(a) ...............12

          1.   The Settlement Class Is Sufficiently Numerous .........................................12

          2.   There Are Common Questions of Law and Fact ........................................12

          3.   The Proposed Class Representative's Claims Are Typical.........................13

4.      Lead Plaintiff Will Fairly and Adequately Protect the Settlement Class ................................................................................................ 14

B.      The Proposed Settlement Class Satisfies Rule 23(b)(3) ........................................ 14

1.      Common Questions of Law or Fact Predominate ..................................... 15

2.      A Class Action Is Superior Method of Adjudication ................................ 16

V.      THE PROPOSED NOTICE PLAN AND FORMS SHOULD BE APPROVED ............. 16

VI.     PROPOSED PLAN OF ALLOCATION ............................................................................. 18

VII.    PROPOSED SCHEDULE OF EVENTS ............................................................................. 18

VIII.   CONCLUSION ...................................................................................................................... 19

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Adamson v. Bowen,*
  855 F.2d 668 (10th Cir. 1988)................................................................. 13, 14

*Affiliated Ute Citizens of Utah v. United States,*
  406 U.S. 128 (1972) .......................................................................... 16

*Amchem Products, Inc. v. Windsor,*
  521 U.S. 591 (1997) .................................................................... 12, 16, 17

*Amgen Inc. v. Conn. Ret. Plans & Trust Funds,*
  133 S. Ct. 1184 (2013) ....................................................................... 16

*Anderson v. First Sec. Corp.,*
  249 F. Supp. 2d 1256 (D. Utah 2002) ........................................................ 9

*Baker v. Comprehensive Employee Solutions,*
  227 F.R.D. 354 (D. Utah 2005)..................................................... 13, 14, 15

*Banks v. Central  Refrigerated Servs.,*
  No. 2:16-CV-356-DAK, 2017 U.S.  Dist.
  LEXIS 67423 (D. Utah May 2, 2017)....................................................... 13

*Basic Inc. v. Levinson,*
  485 U.S. 224 (1988) ..................................................................... 16, 17

*Bennett v. Sprint Nextel Corp.,*
  298 F.R.D. 498 (D. Kan. 2014).......................................................... 13, 16

*Caprin v. Simon Transportation. Servs.,*
  112 F. Supp. 2d 1251 (D. Utah 2000) ........................................................ 9

*City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.,*
  65 F. Supp. 3d 840 (N.D. Cal. 2014) ........................................................ 9

*DeJulius v. New England Health Care Employees Pension Fund,*
  429 F.3d 935 (10th Cir. 2005)........................................................... 17, 18

*Ditty v. Check Rite, Ltd.,*
  182 F.R.D. 639 (D. Utah 1998)............................................................. 13

*Geiger v. Sisters of Charity of Leavenworth Health Sys.,*
  No. 14-2378, 2015 U.S. Dist. LEXIS 97362 (D. Kan. July 27, 2015) ........................ 11

*Halliburton Co. v. Erica P. John Fund, Inc.*,
   134 S. Ct. 2398 (2014) ................................................................ 16

*Harper v. C.R. England, Inc*.,
   Case No. 2:16-cv-906-DB, 2016 U.S. Dist.
   LEXIS 171496 (D. Utah December 12, 2016) ........................... 7

*Hicks v. Morgan Stanley & Co*.,
   No. 01 Civ. 10071 (RJH), 2005 U.S. Dist.
   LEXIS 24890 (S.D.N.Y. Oct. 19, 2005) ................................... 11

*In re Crocs, Inc. Sec. Litig.,*
   No. 07-cv-02351-PAB-KLM, 2013 U.S. Dist.
   LEXIS 122593 (D. Colo. Aug. 28, 2013) ........................... *passim*

*In re Integra Realty Resources, Inc.,*
   354 F.3d 1246 (10th Cir. 2004) ................................................. 18

*In re Intelcom Group Sec. Litig.*,
   169 F.R.D. 142 (D. Colo. 1996) ................................................. 17

*In re Nature's Sunshine Product's Inc. Sec. Litig.,*
   251 F.R.D. 656 (D. Utah 2008) ................................................. 16

*In re Qwest Commc'ns Int'l, Inc. Sec. Litig.,*
   625 F. Supp. 2d 1133 (D. Colo. 2009) ....................................... 9

*In re Urethane Antitrust Litig.,*
   251 F.R.D. 629 (D. Kan. 2008) ................................................. 14

*Jones v. Nuclear Pharmacy, Inc.*,
   741 F.2d 322 (10th Cir. 1984) ................................................... 7

*Kapur v. USANA Health Sciences, Inc*.,
   No. 2:07-CV-00177DAK, 2008 U.S. Dist.
   LEXIS 58955 (D. Utah July 23, 2008) ....................................... 9

*Karacand v.Edwards,*
   53 F. Supp. 2d 1236 (D. Utah 1999) ......................................... 9

*Lucas v. Kmart Corp*.,
   234 F.R.D. 688 (D. Colo. 2006) ................................... 6, 8, 9, 12

*Miller v. Basic Research, LLC,*
   285 F.R.D. 647 (D. Utah. 2010) ................................... 13, 15, 16

*Mullane v. Cent. Hanover Bank & Trust Co.*
   339 U.S. 306 (1950) ................................................................ 17

*Nakkhumpun v. Taylor*,
No. 12-CV-01038-CMA-CBS, 2015 U.S. Dist.
LEXIS 149850 (D. Colo. Nov. 3, 2015) ........................................... 6, 12

*New England Health Care Employees Pension Fund v. Woodruff*,
520 F.3d 1255 (10th Cir. 2008) .......................................................... 6

*Nieberding v. Barrette Outdoor Living, Inc.*,
No. 12-CV-2353-DDC-TJJ, 2015 U.S. Dist.
LEXIS 48692 (D. Kan. Apr. 14, 2015) ................................................ 7

*Redwen v. Sino Clean Energy, Inc.*,
No. CV 11-3936 PA (SSx), 2013 U.S. Dist.
LEXIS 100275 (C.D. Cal. July 9, 2013) ............................................ 19

*Rutter & Wilbanks Corp. v. Shell Oil Co.*,
314 F.3d 1180 (10th Cir. 2002) ................................................ 7, 14, 15

*Tripp v. Berman & Rabin, P.A.*,
Case No. 14-CV-2646-DDC-GEB,
2016 U.S. Dist. LEXIS 87691 (D. Kan. July 6, 2016) ......................... 6

*Vaszlavik v. Storage Tech. Corp.*,
Civil Action No. 95-B-2525, 2000 U.S. Dist.
LEXIS 21140 (D. Colo. Mar. 9, 2000) ............................................... 5

*Wornicki v. Brokerpriceopinion.com, Inc.*,
No. 13-cv-03258-PAB-KMT, 2017 U.S. Dist.
LEXIS 121535 (D. Colo. Aug. 2, 2017) .............................................. 6

**Statutes**

15 U.S.C.
§78u-4(a)(7)(A)-(F) .......................................................................... 18

**Other Authorities**

Alba Conte & Herbert Newberg,
4 NEWBERG ON CLASS ACTIONS
§ 11:27 (4th ed. 2002) .................................................................. 7, 12

4 William B. Rubenstein, et al.,
NEWBERG ON CLASS ACTIONS
§13:12 (5th ed. 2014) ................................................................................. 6

5 Jerold S. Solovy, et al.,
MOORE'S FEDERAL PRACTICE - CIVIL
§ 23.165 (2018) .......................................................................................... 7

Laarni T. Bulan, et al.,
*Securities Class Action Settlements - 2016 Review and Analysis*
5 (Cornerstone Research 2016) ................................................................ 11

**Rules**

Fed. R. Civ. P.
23(a)(1) ..................................................................................................... 13

23(b)(3) ............................................................................................ 15, 16, 17

23(c)(2) ..................................................................................................... 17

23(g)(1)(A) ................................................................................................ 15

## I.  INTRODUCTION

Lead Plaintiff The New York Hotel Trades Council and Hotel Association of New York City, Inc. Pension Fund ("Lead Plaintiff"), on behalf of itself, and the Settlement Class, on the one hand, and Vista Outdoor Inc. ("Vista" or the "Company"), Mark W. DeYoung, Stephen M. Nolan and Kelly T. Grindle (collectively, the "Individual Defendants" and, together with Vista, the "Defendants"), on the other hand, have reached a proposed settlement of this securities class action for a total of $6,250,000 in cash that, if approved, will resolve all claims in the Action against Defendants.[1]  Lead Plaintiff and Lead Counsel Wolf Haldenstein Adler Freeman & Herz LLP (proposed "Class Counsel") respectively move for preliminary approval of the proposed Settlement.

Considering the substantial litigation risks discussed below, including the possibility of no recovery at all, Class Counsel recommends a $6.25 million all cash settlement in this action for the following reasons:

(i)      Although Lead Plaintiff believes that its claims have substantial merit and that the Lead Plaintiff's brief opposing Defendants' Motion to Dismiss would be successful, the level of detail required to successfully plead a complex securities class action with no initial discovery permitted under the PSLRA creates a substantial pleading hurdle at the Motion to Dismiss stage.

(ii)     Based on the various facts provided by the parties both confidentially and through the briefing on the Motion to Dismiss, Mr. Melnick, a knowledgeable and experienced mediator, recommended the proposed Settlement in light of the significant risks and costs continuing the Action could pose.

(iii)    A settlement of $6.25 million before a Motion to Dismiss has been decided represents a substantial recovery in light of the real risk of no recovery if a Motion to Dismiss is

---

[1]      All capitalized terms that are not otherwise defined herein shall have the same meaning as those provided in the Stipulation and Agreement of Settlement, dated as of July 2, 2018 (the "Stipulation" or the "Settlement"), filed concurrently herewith as Exhibit 1 to the Declaration of Betsy C. Manifold in Support of Lead Plaintiff's Unopposed Motion Preliminarily Approving Class Action Settlement, Approving Form and Manner of Notice, and Setting Date for Hearing on Final Approval of Settlement ("Manifold Declaration" or "Manifold Decl.").

granted with prejudice and provides benefits from conserving the Defendants' resources to further fund a settlement rather than incur additional litigation costs.

(iv)    Lead Counsel has retained accounting and damages experts, worked with an in-house financial analyst, and conducted substantive confirmatory factual investigation, including review of non-public Vista documents and an interview with a knowledgeable representative of Vista related to the claims here, and based on this investigation, and in light of the factors discussed herein, believes that the Settlement is a good result for the proposed Settlement Class.

In light of the foregoing consideration, the $6.25 million settlement is well within the range of reasonableness and should be preliminarily approved.

Accordingly, Lead Plaintiff and proposed Class Counsel respectfully moves this Court for entry of the proposed Order Granting Preliminary Approval of Class Action Settlement, Approving Form and Manner of Notice, and Setting Date for a Fairness Hearing on Final Approval of Settlement ("Preliminary Approval Order") that will: (i) preliminarily approve the Settlement on the terms set forth in the Stipulation; (ii) certify the Settlement Class for settlement purposes only; (iii) appoint Lead Plaintiff as Class Representative, Wolf Haldenstein Adler Freeman & Herz LLP as Class Counsel ("Wolf Haldenstein" or "Lead Counsel), and Anderson & Karrenberg as Liaison Counsel; (iv) approve the form and manner of giving notice of the Settlement to the Settlement Class; and (v) set a date for the Settlement Fairness Hearing, at which time the Court will consider final approval of the Settlement, the Plan of Allocation, and Lead Counsel's application for attorneys' fees and expenses, including reimbursement of expenses and lost wages to Lead Plaintiff.  Defendants do not oppose the relief requested by this motion.

## II.    BACKGROUND

### A.  The Action

On July 3, 2017, this Court appointed Wolf Haldenstein as Lead Counsel. Manifold Decl., ¶ 9. On September 22, 2017, Lead Plaintiff, by and through its attorneys, filed a first amended complaint. Lead Plaintiff alleged that Vista failed to properly recognize a $449 million goodwill impairment in its Hunting & Shooting Accessories reporting unit. Manifold Decl., ¶ 10.

On January 12, 2018, Lead Plaintiff filed a second amended complaint (the "Complaint") following Vista's announcement of an additional $152 million goodwill impairment in the same product area. Manifold Decl., ¶¶ 11-12. The Complaint alleged federal securities claims on behalf of persons and entities that acquired Vista's securities between August 11, 2016 and November 9, 2017, inclusive (the "Class Period") (collectively, the "Class"), in the United States District Court for the District of Utah (the "Court"), and is captioned *Lentsch v. Vista Outdoor Inc., et al.*, No. 1:17-cv-00012-DAK-EJF.

The Complaint alleged that some or all of the Defendants violated Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") by failing to make required disclosures about Vista's operations and financial results, including the January 2017 and November 2017 write-offs of recorded goodwill in Vista's Outdoor Product segment.  The Complaint also alleged, *inter alia,* that as a result of Defendants' purported actions, Lead Plaintiff and members of the Class suffered harm and requested that the Court grant compensatory damages, costs, expenses and other appropriate relief for such alleged harm. Manifold Decl., ¶ 12.

On February 22, 2018, Defendants filed a Motion to Dismiss the Complaint for failure to state a claim upon which relief could be granted and argued that Lead Plaintiff failed to plead any materially false or misleading statement or omission or scienter.  Manifold Decl., ¶ 13. Defendants argued that statements of goodwill are opinions, not fact, and only actionable if shown to be subjectively and objectively false and that the Complaint failed to identify sufficient facts to meet this difficult standard.  On March 26, 2018, Lead Plaintiff filed an opposition to Defendants' Motion to Dismiss and argued that it adequately alleged a claim under both Section 10(b) and Section 20(a) of the Securities Exchange Act of 1934. Oral argument was scheduled for June 12, 2018.  *Id.*

### B.  Negotiations

On April 13, 2018, before briefing on Defendants' Motion to Dismiss was complete, the Parties and their counsel engaged in a mediation with Jed Melnick, Esq. (the "Mediation") and after extensive facilitated negotiations at the Mediation, the Parties reached an agreement in

principle concerning a proposed settlement of the Action, and executed a Memorandum of Understanding ("MOU") on April 20, 2018.  The Parties subsequently negotiated and entered into a definitive Stipulation and Agreement of Settlement dated July 2, 2018 (the "Stipulation" or the "Settlement").  Manifold Decl., ¶¶ 14-15.

Lead Plaintiff believes that the claims asserted in the Action have merit.  However, Lead Plaintiff and Lead Counsel recognize and acknowledge the expense and length of continued proceedings necessary to prosecute the Action through trial and appeals.  Lead Plaintiff and Lead Counsel also have taken into account the uncertain outcome and the risk of any litigation, especially in complex litigation such as the Action, as well as the difficulties and delays inherent in such litigation, including the inherent problems of proof.  Lead Counsel also is aware of the possible defenses to the claims alleged in the Action.  Based on their evaluation, Lead Plaintiff and Lead Counsel believe that the Settlement set forth in the Stipulation confers substantial monetary benefits upon the Settlement Class and is in the best interests of Lead Plaintiff and the Settlement Class.

### C.  The Settlement

The Settlement's terms are detailed in the Stipulation attached to the Manifold Declaration as Exhibit 1.  A summary of the material terms of the Settlement follows:

#### 1.   The Settlement Class

The Settlement Class is defined as follows:

all persons or entities that purchased or otherwise acquired Vista's securities between August 11, 2016 and November 9, 2017, inclusive, including any and all of their respective successors in interest, predecessors, representatives, trustees, executors, administrators, heirs, assigns or transferees, immediate and remote, and any person or entity acting for or on behalf of, or claiming under, any of them, and each of them who suffered damages. Excluded from the Class are (i) Individual Defendants; (ii) any person who was an officer, director or managing agent of Vista or any of its subsidiaries or affiliates at any point during the Class Period; (iii) members of the immediate family of any of the foregoing individuals; (iv) any affiliate of Vista; (v) any entity in which the Defendants have or had a controlling interest; and (vi) the legal representatives, heirs, predecessors, successors or assigns of any such excluded party. Also excluded from the Class are any Opt-Outs.

Stipulation § 1.6

### 2.      Settlement Amount

The Settlement Amount is $6,250,000 in cash, which includes all attorneys' fees and expenses, and all costs related to the class and settlement administration. Stipulation § 1.42.

### 3.      Class Representative Service Awards

Class Counsel will seek a Service Award of $10,000 for Lead Plaintiff. If the Court approves it, such Award will be paid from the Settlement Fund, and will be in addition to the relief to which Lead Plaintiff is entitled as a Settlement Class Member under the terms of the Settlement. Manifold Decl., ¶ 31.

### 4.      Attorneys' Fees and Costs

Class Counsel intend to request attorneys' fees of up to 33% of the Settlement Fund, plus reimbursement of litigation costs and expenses.[2] Stipulation § 6; Manifold Decl., ¶¶ 27, 30. Class Counsel must submit their application for attorneys' fees, litigation costs, and expenses 35 days prior to the Settlement Hearing, which is two weeks before the deadline for Settlement Class Members to object or exclude themselves from the Settlement. [Proposed] Preliminary Approval Order ¶ 21.

---

[2]      Fees for class action settlements generally range from 20%-50% and courts generally award 30%. *Vaszlavik v. Storage Tech. Corp.*, Civil Action No. 95-B-2525, 2000 U.S. Dist. LEXIS 21140, at *4-5 (D. Colo. Mar. 9, 2000).

### III.    ARGUMENT

####     A.    Preliminary Approval of the Proposed Settlement is Merited

#####         1.    The Standard for Preliminary Approval

"[P]ublic policy strongly favor[s] the pretrial settlement of class action lawsuits . . . ." *New England Health Care Employees Pension Fund v. Woodruff*, 520 F.3d 1255, 1258 (10th Cir. 2008) (citation omitted).  Rule 23(e) of the Federal Rules of Civil Procedure requires judicial approval for the compromise of claims brought on a class basis.  District court review of a class action settlement proposal is a two-step process.  4 William B. Rubenstein, et al., NEWBERG ON CLASS ACTIONS §13:12 (5th ed. 2014).  The first step is a preliminary, pre-notification hearing to determine whether "notice of the proposed settlement should be sent to the class."  *Id.* at §13:13; *Nakkhumpun v. Taylor*, No. 12-CV-01038-CMA-CBS, 2015 U.S. Dist. LEXIS 149850, at *8 (D. Colo. Nov. 3, 2015).  "If the Court grants preliminary approval, it directs notice to class members and sets a hearing at which it will make a final determination on the fairness of the class action settlement."  *Tripp v. Berman & Rabin, P.A.*, Case No. 14-CV-2646-DDC-GEB, 2016 U.S. Dist. LEXIS 87691, at *5 (D. Kan. July 6, 2016) (citation omitted).  At the preliminary approval stage, the question is "whether there is any reason not to notify the class members of the proposed settlement and to proceed with a fairness hearing."  *Lucas v. Kmart Corp.*, 234 F.R.D. 688, 693 (D. Colo. 2006).  A proposed settlement of a class action should be preliminarily approved where it appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, and does not improperly grant preferential treatment to class representatives. *Wornicki v. Brokerpriceopinion.com, Inc.*, No. 13-cv-03258-PAB-KMT, 2017 U.S. Dist. LEXIS 121535, at *4-5 (D. Colo. Aug. 2, 2017).

####     B.    The Settlement is Within the Range of Reasonableness

Preliminary approval does not require the trial court to answer the ultimate question of whether a proposed settlement is fair, reasonable, and adequate. Rather, that determination is made only after notice of the settlement has been given to the members

of the class and after they have been given an opportunity to voice their views on the settlement. See 5 Jerold S. Solovy, et al., MOORE'S FEDERAL PRACTICE - CIVIL § 23.165 (2018).

Approval of a proposed settlement is within the sound discretion of the Court. *See Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1187 (10th Cir. 2002). The Court must make a preliminary determination that the Settlement is within the "range of reasonableness." 4 Alba Conte & Herbert Newberg, NEWBERG ON CLASS ACTIONS § 11.26 (4th ed. 2002). At this point, the Parties request only that the Court grant preliminary approval of the Settlement. "While the Court will consider the Tenth Circuit's factors in depth at the final approval hearing, they are a useful guide at the preliminary approval stage as well." *Nieberding v. Barrette Outdoor Living, Inc.*, No. 12-CV-2353-DDC-TJJ, 2015 U.S. Dist. LEXIS 48692, at *4 (D. Kan. Apr. 14, 2015) (citation and quotations omitted). The Tenth Circuit's factors include:

(1)     whether the proposed settlement was fairly and honestly negotiated;

(2)     whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt;

(3)     whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and

(4)     the judgment of the parties that the settlement is fair and reasonable.

*Rutter*, 314 F.3d at 1188; *Harper v. C.R. England, Inc.*, Case No. 2:16-cv-906-DB, 2016 U.S. Dist. LEXIS 171496, at * 7-8 (D. Utah December 12, 2016); *Jones v. Nuclear Pharmacy, Inc.*, 741 F.2d 322, 324 (10th Cir. 1984). This Settlement satisfies each of the foregoing prerequisites:

### 1.     The Settlement Was Fairly and Honestly Negotiated

Where a settlement results from arm's-length negotiations between experienced counsel, "the Court may presume the settlement to be fair, adequate, and reasonable." *Lucas*, 234 F.R.D. at 693. The proposed Settlement was the result of arm's-length negotiations between highly experienced counsel with the assistance of an experienced mediator, Jed D. Melnick, Esq. of JAMS, who has successfully settled many complex securities class actions. Manifold Decl., ¶¶ 5, 14. Lead Counsel are particularly experienced in complex class action litigation and have served as lead counsel in complex class actions for nearly five decades *See* Manifold Decl., Ex. 2

(Wolf Haldenstein firm resume).  Class Counsel zealously represented their clients in litigating the Motion to Dismiss and at mediation.

In negotiating this Settlement in particular, Lead Counsel conducted a thorough investigation and analysis of Plaintiffs' claims, utilized the expertise of an in-house financial analyst, and engaged both accounting and damage experts which enabled them to gain an understanding of the central questions in this action, and prepared them for well-informed settlement negotiations.   Manifold Decl., ¶ 6.   Lead Counsel were also well-positioned to evaluate the appropriate basis upon which to settle the claims as a result of their analysis, described below, of completed settlements in similar cases.

The parties engaged in extensive negotiations until eventually agreeing in principle to the Settlement, then worked to memorialize the terms of the Settlement, first in the MOU and then in the Stipulation.  Manifold Decl., ¶ 15.  Indeed, the fact that the Settlement was reached under the supervision of an experienced mediator with considerable knowledge and expertise in the field of securities laws demonstrates honest negotiations between the Parties.  *See In re Crocs, Inc. Sec. Litig.,* No. 07-cv-02351-PAB-KLM, 2013 U.S. Dist. LEXIS 122593, at *40 (D. Colo. Aug. 28, 2013). The Settlement is a product of informed, fair and honest negotiations among experienced counsel and merits preliminary approval.

### 2.    Serious Questions of Fact and Law Exist

Any settlement requires the parties to balance the merits of claims and defenses asserted against the attendant risks of continued litigation and delay.   Lead Plaintiff believes that the claims asserted in the Complaint are meritorious and Lead Plaintiff could prevail on the Motion to Dismiss, and ultimately at trial.   However, continuing the Action poses significant risks and additional costs.   The Parties have "reasonably conclude[d] that there are serious questions of law and fact that . . . could significantly impact" the case, and thus, settlement is a favorable alternative to continued litigation.  *Lucas*, 234 F.R.D. at 693-94; *see also In re Qwest Commc'ns Int'l, Inc. Sec. Litig.*, 625 F. Supp. 2d 1133, 1138 (D. Colo. 2009) ("doubt augurs in favor of settlement because settlement creates a certainty of some recovery. . . ").

- 8 -

Lead Plaintiff and Lead Counsel are confident in the strength of their case but are also pragmatic in their awareness of the pleading requirements under the PSLRA, various legal arguments available to Defendants, and risks inherent in continued litigation.   The risk of material adverse findings against the Class is not insignificant.   When the Parties reached an agreement, the Court had not yet decided Defendants' Motion to Dismiss the Complaint nor had it certified a Class.   How the Court would rule on the Motion to Dismiss and class certification is unknown but there certainly is a risk that Plaintiff would lose one or both motions.[3]

For example, while Lead Plaintiff believes it could successfully establish all the elements of the securities fraud claims, scienter presents complex issues of proof for the Class.   *See In re Qwest Commc'ns*, 625 F. Supp. 2d at 1138 ("The accounting issues, the scienter issues, the causation issues, and the damages issues all are complex and problematic.   Presenting these issues to a jury would create substantial risks for all parties, including the plaintiffs."); *see also In re Crocs*, 2013 U.S. Dist. LEXIS 122593, at *41-42 (preliminary approving settlement after noting the risks plaintiffs would face in certifying a class, surviving summary judgment and winning at trial).

In their Motion to Dismiss, Defendants argued that the Company's statements related to goodwill are statements of pure opinion, not fact, and must be both subjectively and objectively false.   The parties' briefing on the Defendants' Motion to Dismiss revealed sharply opposed positions on several fundamental legal questions, including whether the Complaint was sufficiently specific, whether statements of goodwill are statements of fact or opinion or a mixture of both, and the pleading standard to be applied.   Defendants have argued, and would continue to argue, that Vista management believed, at all times, its statements during the Class Period with respect to goodwill and other matters.

---

[3]      *See, e.g., Anderson v. First Sec. Corp.*, 249 F. Supp. 2d 1256, 1273 (D. Utah 2002) (dismissing securities class action complaint with prejudice); *Kapur v. USANA Health Sciences, Inc.*, No. 2:07-CV-00177DAK, 2008 U.S. Dist. LEXIS 58955, at * 51 (D. Utah July 23, 2008) (same); *Karacand v. Edwards*, 53 F. Supp. 2d 1236, 1253 (D. Utah 1999) (same); *Caprin v. Simon Transportation. Servs.*, 112 F. Supp. 2d 1251, 1260 (D. Utah 2000) (same); *City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*, 65 F. Supp. 3d 840, 863 (N.D. Cal. 2014) (dismissing class action complaint that alleged defendants failed to timely record impairment to goodwill).

Defendants believed that their Motion to Dismiss would be granted with prejudice while Lead Plaintiff believed that its allegations as a whole were adequately pleaded.   Under the circumstances, Lead Counsel have appropriately determined that the benefits of settlement outweigh the gamble of continued litigation.

### 3.    The Value of a Guaranteed Recovery Outweighs the Possibility of Relief after Protracted and Expensive Litigation

According to damages experts retained by Lead Counsel, the immediate recovery provided by the Settlement is roughly 6% of the maximum potential recovery Settlement Class Members could have achieved at trial, provided the Class was certified, the claims survived Summary Judgment, and Defendants' anticipated challenges to the methodology of Lead Plaintiff's expert were unsuccessful.  Manifold Decl., ¶ 18.  This recovery is an excellent result when considering those substantial inherent risks in this litigation and delay that would necessarily occur from protracted litigation.

The monetary value of the settlement must be compared to "the possibility of some greater relief at a later time, taking into consideration the additional risks and costs that go hand in hand with protracted litigation."  *Geiger v. Sisters of Charity of Leavenworth Health Sys*., No. 14-2378, 2015 U.S. Dist. LEXIS 97362, at *8 (D. Kan. July 27, 2015).

The Settlement Fund is fair, adequate and reasonable, when weighed against costly and time-consuming litigation that would ensue absent settlement.   The $6.25 million Settlement Amount that recovers roughly 6% of the maximum potential recovery Settlement Class Members could have achieved at trial is comparable to other securities class action settlements.  For example, as reported by Cornerstone Research, in 2016, the median settlement in securities actions as a percentage of estimated damages was 2.5%.  *See* Laarni T. Bulan, et al., *Securities Class Action Settlements - 2016 Review and Analysis* 7 (Cornerstone Research 2016).  In cases where the estimated recovery was a similar size to this action ($50 to $124 million), the median settlement as a percentage of estimated damages was 5.8%.   And courts routinely approve settlements in this range.  *See e.g*., *Hicks v. Morgan Stanley & Co*., No. 01 Civ. 10071 (RJH), 2005 U.S. Dist. LEXIS 24890, at *19 (S.D.N.Y. Oct. 19, 2005) (settlement providing 3.8% recovery of Plaintiffs' damage estimate is within the range of reasonableness for post-PSLRA

securities class action settlements).  Finally, the median securities settlement was $ 6.1 million in 2015 and $8.6 million in 2016.   Laarni T. Bulan, et al., *Securities Class Action Settlements - 2016 Review and Analysis* 5 (Cornerstone Research 2016).   Accordingly, the Settlement is reasonable in comparison to similar settlements.

**4.      The Parties Believe that the Proposed Settlement is Fair, Adequate, and Reasonable**

Lead Counsel and Defendants reached this settlement after arm's-length negotiations and believe that it represents a good outcome for all Parties.  *See* Manifold Decl., ¶ 24.  Defendants will obtain a release of all claims asserted in the Complaint and will avoid the expense, burden and uncertainty associated with further proceedings.  Similarly, Lead Plaintiff and the Settlement Class are guaranteed monetary recovery and avoid the possibility of losing class certification, a motion to dismiss, summary judgment, or at trial.  Against this background, counsel's opinion "is entitled to considerable weight" and supports approval of the settlement.  *See Lucas,* 234 F.R.D. at 695.

## IV.   THE SETTLEMENT CLASS SHOULD BE PRELIMINARILY CERTIFIED

Lead Plaintiff requests that the Court preliminarily certify the Settlement Class for purposes of settlement.  The class consists of: all persons and entities that purchased or otherwise acquired securities of Vista Outdoor Inc. between August 11, 2016 and November 9, 2017, inclusive, and were damaged thereby.[4]  "[T]he Tenth Circuit has endorsed class actions as an appropriate means to resolve claims under the federal securities laws." *Nakkhumpun*, 2015 U.S. Dist. LEXIS 149850, at *9 (citation and quotations omitted).

The Court may certify a class solely for purposes of settlement even where the parties have reached a settlement before litigating the class certification issue. *See, e.g.,* Alba Conte & Herbert Newberg, 4 NEWBERG ON CLASS ACTIONS § 11:27 (4th ed. 2002) ("When the  court has

---

[4]       Excluded from the Settlement Class are:  Vista Outdoor Inc., Mark W. DeYoung, Stephen M. Nolan and Kelly T. Grindle; the officers and directors of Vista during the Class Period; the immediate family members of any of the foregoing individuals; any affiliate of Vista; any entity in which Defendants have or had a controlling interest; and the legal representatives, heirs, successors or assigns of any of the foregoing excluded persons and entities.  Also excluded from the Settlement Class are any Settlement Class Members who properly excluded themselves by submitting a valid and timely request for exclusion.

- 11 -

not yet entered a formal order determining that the action may be maintained as a class action, the parties may stipulate that it be maintained as a class action for the purpose of settlement only.").

In deciding whether to provisionally certify a settlement class, the Court must consider the same factors that it would consider in connection with a proposed litigation class—*i.e.*, all Rule 23(a) factors and at least one subsection of Rule 23(b) must be satisfied. The Court need not, however, consider the manageability of a potential trial, since the settlement, if approved, would obviate the need for trial. *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 620 (1997).

For the reasons set forth below, the requirements of Federal Rule of Civil Procedure 23 are satisfied and certification of the proposed Settlement Class is appropriate:

## A.     The Proposed Settlement Class Meets the Requirements of Rule 23(a)

### 1.     The Settlement Class Is Sufficiently Numerous

Classes numbering in the hundreds easily meet the numerosity requirement of Rule 23(a)(1). *See Baker v. Comprehensive Employee Solutions,* 227 F.R.D. 354, 359 (D. Utah 2005) ("Plaintiffs meet the requirement of numerosity by alleging in their Complaint that the proposed class would include hundreds of participants and beneficiaries.").  "To satisfy this requirement, [Plaintiff] need not show that joinder of all members is impossible, only that it is impracticable." *Ditty v. Check Rite, Ltd.*, 182 F.R.D. 639, 641 (D. Utah 1998); Fed. R. Civ. P. 23(a)(1)("so numerous that joinder of all members is impracticable"). A plaintiff is not required to prove the actual size of the class, and the court may rely on common sense assumptions in evaluating numerosity. *Banks v. Central  Refrigerated Servs*., No. 2:16-CV-356-DAK, 2017 U.S.  Dist. LEXIS 67423, at *20 (D. Utah May 2, 2017).  During the Class Period, Vista had an average of about 60 million shares of common stock outstanding that traded on the New York Stock Exchange.  *See* Dkt. No. 62 (Complaint) at ¶ 216.  Because there are likely hundreds of class members, the numerosity requirement is met.

### 2.     There Are Common Questions of Law and Fact

"Rule 23(a)(2) requires Plaintiffs to show that questions of law or fact are common to the class, that is, members of the putative class possess the same interest and suffer the same injury."

*Bennett v. Sprint Nextel Corp*., 298 F.R.D. 498, 505 (D. Kan. 2014) (quotations omitted).  The threshold for commonality is not high.  "Commonality requires only one question of law or fact common to the entire class."  *Miller v. Basic Research, LLC*, 285 F.R.D. 647, 656 (D. Utah. 2010).  Commonality exists so long as "the remedies the class seeks . . . do not depend on the individual facts of each case, but apply equally to all cases pending within the class." *Adamson v. Bowen*, 855 F.2d 668, 676 (10th Cir. 1988). "That the claims of individual class members may differ factually should not preclude certification . . . ." *Id.*

Here, the commonality requirement is readily satisfied.  Common questions of law and fact include, *inter alia*:  (i) whether Defendants' publicly disseminated statements during the Class Period omitted and/or misrepresented material facts; (ii) whether Defendants acted with scienter; and (iii) whether the price of Vista securities were artificially inflated during the Class Period causing damages.  Because Lead Plaintiff alleges that Defendants have injured all Settlement Class Members in the same way, and the Settlement provides common resolution to common questions raised by the claims, Rule 23(a)(2) is satisfied.

### 3.      The Proposed Class Representative's Claims Are Typical

For claims to be typical, the class representative must be a part of the class and possess the same interest and suffer the same injury as class members.  *See In re Urethane Antitrust Litig.,* 251 F.R.D. 629, 640 (D. Kan. 2008).  The facts surrounding all claims need not be identical, but the claims of the class representative and the class must be "based on the same legal or remedial theory."  *Adamson,* 855 F.2d at 676.  *See also Baker*, 227 F.R.D. at 359 (finding typicality requirements met where the "thrust of Plaintiffs' arguments is that they have suffered the same harm as that suffered by others in the class").  Here, Lead Plaintiff's claims are virtually indistinguishable from those of the Settlement Class.  Lead Plaintiff, like all Settlement Class Members, asserts claims that concern the same statements alleged to be false and misleading, arise from the same legal theories, and allege the same type of harm and entitlement to relief, *i.e.*, sustained damages when it purchased Vista securities at inflated prices during the Class Period.  Lead Plaintiff's claims are therefore typical of the Settlement Class it seeks to represent.

4.      **Lead Plaintiff Will Fairly and Adequately Protect the Settlement Class**

Both the Lead Plaintiff and the Lead Counsel: (a) must not have impermissible conflicts of interest with the Settlement Class; and (b) must vigorously prosecute the action for the Settlement Class to meet the adequacy requirement.   *See Rutter,* 314 F.3d at 1187-88. "Adequate representation depends on, among other factors, an absence of antagonism between the representatives and absentees, and a sharing of interest between representatives and absentees." *In re Crocs, Inc. Sec. Litig.*, 2013 U.S. Dist. LEXIS 122593, at *32.

Here, Lead Plaintiff's interests are fully aligned with those of the Class Members.  There are no actual or potential conflicts of interests.   Furthermore, Lead Plaintiff has actively supervised this litigation and will continue to do so, taking all the steps necessary to ensure that it fulfills its fiduciary obligations to the Settlement Class.

Lead Counsel is qualified, experienced, and able to conduct this litigation and is likewise adequate.   Indeed, Lead Counsel is a nationally recognized firm that has both successfully litigated numerous securities fraud and complex class action cases and have dedicated substantial resources to the prosecution of this action.[5]   Manifold Decl., ¶ 26, Ex. 2 (Firm Resume). Plaintiffs and Class Counsel have vigorously and competently represented the Settlement Class Members' interests in the action. *See Rutter*, 314 F.3d at 1188; *Baker*, 227 F.R.D. at 359 (adequacy met where counsel had "considerable experience" in underlying substantive claims and class actions).

B.      **The Proposed Settlement Class Satisfies Rule 23(b)(3)**

Rule 23(b)(3) requires (i) that the "questions of law or fact common to class members predominate over any questions affecting only individual members" and (ii) that the class action mechanism must be "superior to other available methods for fairly and efficiently adjudicating the controversy."   Fed. R. Civ. P. 23(b)(3).   Those requirements are met here.   Under Rule 23(b)(3), "[c]ommon issues predominate when the focus is on the defendant's conduct and not

---

[5]      *See* Fed. R. Civ. P. 23(g)(1)(A) (instructing that a court consider the work of counsel done in identifying or investigating potential claims in the action, counsel's experience in handling class actions and other complex litigation, counsel's knowledge of the applicable law and the resources counsel will commit to represent the class).

on the conduct of the individual class members . . . . Predominance is usually present when the action is based on a common course of conduct on the part of defendant." *Miller*, 285 F.R.D. at 657.

### 1.    Common Questions of Law or Fact Predominate

The predominance inquiry "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods.*, 521 U.S. at 623. "Predominance is usually present when the action is based on a common course of conduct on the part of defendant." *Miller*, 285 F.R.D. at 657. Rule 23(b)(3) "does *not* require a plaintiff seeking class certification to prove that each 'elemen[t] of [their] claim [is] susceptible to classwide proof,'" just "that common questions '*predominate* over any questions affecting only individual [class] members.'" *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 133 S. Ct. 1184, 1196 (2013) (alterations in original). "This requirement is often 'readily met in certain cases alleging consumer or securities fraud.'" *Sprint*, 298 F.R.D. at 506 (quoting *Amchem*, 521 U.S. at 625).

Here, common questions of law and fact predominate over individual questions because Defendants' alleged fraudulent statements and omissions affected all Settlement Class Members in the same manner (*i.e.*, through public statements made to the market and documents publicly filed with the SEC.) Moreover, the application of the "fraud-on-the-market" presumption of reliance adopted in *Basic Inc. v. Levinson*, 485 U.S. 224, 241-42 (1988) establishes class-wide reliance in this Action. Application of *Basic* dispenses with the requirement that each Settlement Class Member prove individual reliance on Defendants' alleged misstatements and/or omissions. *See id.* at 241-42. The Supreme Court reaffirmed this presumption in *Halliburton Co. v. Erica P. John Fund, Inc.*, 134 S. Ct. 2398 (2014) and *Amgen*, 133 S. Ct. at 1192-93. This theory "holds that 'the market price of shares traded on well-developed markets reflects all publicly available information, and, hence, any material misrepresentations'" and that when an "investor buys or sells stock at the market price, his 'reliance on any public material misrepresentations . . . may be presumed for purposes of a Rule 10b-5 action.'" *Halliburton*, 134 S. Ct. at 2408 (quoting *Basic*, 485 U.S. at 246-47); *In re Nature's Sunshine Product's Inc. Sec. Litig.*, 251 F.R.D. 656, 661 (D. Utah 2008) (*Basic* "obviates the necessity that a plaintiff prove reliance" and "permits the

rebuttable presumption that a plaintiff relied on the integrity of the market price in purchasing his or her shares of stock").[6]   In order for plaintiffs to be entitled to the *Basic* presumption of reliance, the market for the security must be "efficient."  *Basic*, 485 U.S. at 248.  Here, where Vista's securities are traded on the NYSE, a national securities exchange, there is sufficient evidence of market efficiency.

### 2.      A Class Action Is Superior Method of Adjudication

A class action is superior where it serves the primary goals of Rule 23, namely, "economies of time, effort, and expense," without sacrificing fairness.  *See Amchem,* 521 U.S. at 615.  "[T]he superiority of class actions in large securities fraud [cases] is well recognized." *In re Intelcom Group Sec. Litig.*, 169 F.R.D. 142, 149 (D. Colo. 1996).  In sum, as shown above, Rule 23(b)(3) is satisfied, and the Court should preliminarily approve class certification.

For these reasons, the Court should certify the Settlement Class.

## V.      THE PROPOSED NOTICE PLAN AND FORMS SHOULD BE APPROVED

The proposed Notice and Summary Notice, attached as Exhibits A-1 and A-3 to the Stipulation, respectively, satisfy due process, the federal rules and the PSLRA.  Rule 23(c)(2) requires notice of the pendency of the class action to be "the best notice that is practicable under the circumstances."  Fed. R. Civ. P. 23(c)(2).  To satisfy due process, notice must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."  *DeJulius v. New England Health Care Employees Pension Fund,* 429 F.3d 935, 944 (10th Cir. 2005) (quoting *Mullane v. Cent. Hanover Bank & Trust Co.,* 339 U.S. 306, 314 (1950)).

The Notice Program satisfies all of these criteria.  The Notice Program will properly inform the Settlement Class Members of the substantive terms of Settlement and how to obtain additional information about the Settlement.  *See* Manifold Decl., ¶ 33; *In re Crocs, Inc. Sec.*

---

[6]      The same presumption exists for Lead Plaintiff's allegations regarding Defendants' omissions.  In *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128, 153-54 (1972), the Supreme Court held that where a plaintiff alleges "a failure to disclose, positive proof of reliance is not a prerequisite to recovery. All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in the making of this decision."

*Litig.*, 2013 U.S. Dist. LEXIS 122593, at *46-47 (approving notice that provides class members with information regarding anticipated recovery, reasons for the settlement, and the amount of attorneys' fees sought, among other things).  The Notice also satisfies the PSLRA's separate disclosure requirements by, *inter alia,* stating*:* (i) the amount of the Settlement determined in the aggregate and on an average per share basis; (ii) that the Parties do not agree on the average amount of damages per share that would be recoverable; (iii) that Lead Counsel intend to make an application for attorneys' fees and expenses (including the amount of such fees and expenses on an average per share basis); (iv) the name, telephone number, and address of Lead Counsel; and (v) the reasons why the Parties are proposing the Settlement.  15 U.S.C. §78u-4(a)(7)(A)-(F).

The Notice Program is designed to reach a high percentage of Settlement Class Members (including most by direct mail, the best form of notice) and exceeds the requirements of constitutional due process.  *See In re Crocs, Inc. Sec. Litig*., 2013 U.S. Dist. LEXIS 122593, at *46-47.  Notification also includes publication in a national newspaper focusing on investors. Upon entry of the Preliminary Approval Order, the Claims Administrator will mail the Notice to Settlement Class Members who can be identified through reasonable effort.  Lead Counsel will also cause the Summary Notice to be published in *Investor's Business Daily* and transmitted over *PR Newswire*.  In addition, the Notice and Proof of Claim form will be made available for viewing and downloading on the settlement website.

The manner of providing notice, *i.e.*, individual notice by mail and additional publication notice, represents the best notice practicable under the circumstances, and satisfies the requirements of Rule 23, the PSLRA, and due process.  *See, e.g.*, *DeJulius,* 429 F.3d at 947; *In re Integra Realty Resources, Inc.,* 354 F.3d 1246, 1261 (10th Cir. 2004) (finding the notice by publication and mail was sufficient).

Finally, Lead Plaintiff also requests that the Court appoint Garden City Group as the Claims Administrator to provide all notices approved by the Court to Settlement Class Members, to process Proofs of Claim, and to administer the Settlement.  Garden City Group has extensive relevant experience and is a nationally recognized notice and claims administration firm.  *See* Declaration of Stephanie Amin-Giwner ("GCG Decl."), ¶¶ 3-7.  Garden City Group has also

provided an estimate of claims administration costs in this Action and is available to answer any questions by the Court.  *See* GCG Decl., ¶ 18.

## VI.   PROPOSED PLAN OF ALLOCATION

The Court will be asked to approve the proposed Plan of Allocation for the Settlement Fund, which is reported in full in the Notice, at the final Settlement Fairness Hearing.  "[A] plan of allocation . . . fairly treats class members by awarding a *pro rata* share to every Authorized Claimant, even as it sensibly makes interclass distinctions based upon, *inter alia*, the relative strengths and weaknesses of class members' individual claims and the timing of purchases of the securities at issue."  *Redwen v. Sino Clean Energy, Inc.*, No. CV 11-3936 PA (SSx), 2013 U.S. Dist. LEXIS 100275, at *29 (C.D. Cal. July 9, 2013) (citation and internal quotation marks omitted).  Here, the Plan of Allocation (*see* Manifold Decl., ¶ 20) reflects the allegations that the price of Vista securities was artificially inflated during the Class Period and that the inflation was removed in reaction to the alleged corrective disclosures.  The plan provides for the distribution to eligible Class Members or Authorized Claimants based on the amount of alleged artificial inflation reflected in the prices of the securities at the time of purchase and disposition.

Individual Authorized Claimants' recoveries will depend upon when they bought Vista securities and whether they bought, sold or held the securities after the Class Period.  Eligible Authorized Claimants will recover their proportional amount of the Net Settlement Fund based on their Recognized Claim under the Plan of Allocation.  Manifold Decl., ¶ 20.  The Claims Administrator will calculate Authorized Claimants' Recognized Losses and Lead Counsel will file a motion seeking approval of the claim determinations once the administration of the Settlement is complete.  Once it is no longer economically feasible to distribute the Net Settlement Fund, Lead Plaintiff will request Court approval of the distribution of any remaining nominal amount.

## VII.   PROPOSED SCHEDULE OF EVENTS

Lead Plaintiff respectfully proposes the following schedule for Settlement-related events:

| Deadline for mailing individual Notices and Claim Forms (the "Notice Date") | *15 business days after entry of Preliminary Approval Order.* |
|---|---|

| Deadline for publication in *Investor's Business Daily* and transmission over *PR Newswire* | ***Within 14 calendar days of the Notice Date.*** |
|---|---|
| Deadline for filing motions in support of the Settlement, the Plan of Allocation, and Lead Counsel's application for fees and expenses | ***No later than 35 calendar days before the Settlement Hearing.*** |
| Deadline for submission of requests for exclusion or objections | ***Received no later than 21 calendar days before the Settlement Hearing.*** |
| Deadline for filing reply papers in support of the motions | ***No later than 7 calendar days before the Settlement Hearing.*** |
| Settlement Hearing | ***At the Court's convenience, but no fewer than 100 calendar days after the date of the instant motion.*** |
| Deadline for submission of Claim Forms | ***Postmarked or received no later than 120 calendar days after the Notice Date.*** |

## VIII.    CONCLUSION

For the foregoing reasons, Lead Plaintiff respectfully requests that the Court issue an order substantially in the form of the proposed Preliminary Approval Order: (i) preliminarily approving the Settlement and certifying the Settlement Class; (ii) approving the manner and forms of notice set forth in the Preliminary Approval Order; (iii) setting a date for the Settlement Hearing; (iv) appointing Garden City Group as Claims Administrator; and (v) granting such other and further relief as may be required.

Dated:  July 3, 2018

WOLF HALDENSTEIN ADLER
FREEMAN & HERZ LLP

  _/s/ Betsy C. Manifold_
BETSY C. MANIFOLD

Betsy C. Manifold (admitted _pro hac vice_)
750 B Street, Suite 2770
San Diego, CA 92101
Telephone:  619/239-4599
Facsimile:  619/234-4599
manifold@whafh.com

WOLF HALDENSTEIN ADLER
FREEMAN & HERZ LLP
Gregory M. Nespole (admitted _pro hac vice_)
Regina Calcaterra (admitted _pro hac vice_)
Corey Kamin (admitted _pro hac vice_)
Anita Kartalopoulos (admitted _pro hac vice_)
270 Madison Avenue
New York, NY 10016
gmn@whafh.com
calcaterra@whafh.com
kamin@whafh.com
abk@whafh.com

ANDERSON & KARRENBERG, P.C.
Heather M. Sneddon (#9520)
Jared D. Scott (#15066)
50 W. Broadway, Suite 700
Salt Lake City, UT 84101-2035
Tel.: (801) 534-1700
hsneddon@aklawfirm.com
jscott@aklawfirm.com

PITTA LLP
Vincent F. Pitta (admitted pro hac vice)
120 Broadway, 28th Floor
New York, NY 10271
Tel.: (212) 652-3836
vpitta@pittalaw.com

_Attorneys for Lead  Plaintiff_

VISTA:24630.v6

- 20 -