BETSY C. MANIFOLD (*pro hac vice*)
manifold@whafh.com
**WOLF HALDENSTEIN ADLER**
    **FREEMAN & HERZ LLP**
750 B Street, Suite 2770
San Diego, CA 92101
Telephone:  619/239-4599
Facsimile:  619/234-4599

GREGORY M. NESPOLE (*pro hac vice*)
REGINA M. CALCATERRA (*pro hac vice*)
ANITA B. KARTALOPOULOS (*pro hac vice*)
CORREY A. KAMIN (*pro hac vice*)
**WOLF HALDENSTEIN ADLER**
    **FREEMAN & HERZ LLP**
270 Madison Avenue
New York, NY 10016
Telephone:  212/545-4600
Facsimile:  212/686-0114

*Counsel for Lead Plaintiff and*
*Proposed Class Counsel*

**ANDERSON &**
**KARRENBERG**
Heather M. Sneddon (9250)
Jared D. Scott (15066)
50 West Broadway, #700
Salt Lake City, UT 84101-2035
Telephone:  801/534-1700
Facsimile:  801/364-7697
hsneddon@aklawfirm.com
jscott@aklawfirm.com

*Liaison Counsel for Lead Plaintiff*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| **PATRICK LENTSCH**, On Behalf of Himself and All Others Similarly Situated,<br><br>    Plaintiff,<br><br> v.<br><br>**VISTA OUTDOOR INC., MARK W. DEYOUNG, STEPHEN M. NOLAN,** and **KELLY T. GRINDLE**,<br><br>    Defendants. | Case No. 1:17-cv-00012-DAK-EJF<br><br>**LEAD PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT, PLAN OF ALLOCATION, AND CERTIFICATION OF SETTLEMENT CLASS**<br><br>JUDGE:  Hon. Dale A. Kimball |

## TABLE OF CONTENTS

**PAGES**

I.    INTRODUCTION ..................................................................................................1

II.    BACKGROUND ...................................................................................................2

    A.    The Action ................................................................................................2

    B.    Negotiations .............................................................................................3

    C.    The Settlement .........................................................................................4

    D.    The Notice of Settlement .........................................................................4

III.    ARGUMENT ........................................................................................................6

    A.    The Court Should Grant Final Approval of the Proposed Settlement ....................6

        1.    The Standard for Final Approval ..................................................6

        2.    The Settlement Was Fairly and Honestly Negotiated..................6

        3.    Serious Questions of Fact and Law Exist ....................................7

        4.    The Value of a Guaranteed Recovery Outweighs the
Possibility of Relief after Protracted and Expensive Litigation..................9

        5.    The Parties Believe that the Proposed Settlement is Fair,
Adequate, and Reasonable .........................................................10

        6.    The Reaction of Class Members Supports the Settlement.........10

    B.    The Court Should Approve the Plan of Allocation..............................11

    C.    The Notice Program Meets the Applicable Requirements ...................12

    D.    The Settlement Class Satisfies the Requirements of Rule 23 ..............13

        1.    The Proposed Settlement Class Meets the Requirements
of Rule 23(a) ..............................................................................14

            a.  The Settlement Class is Sufficiently Numerous...................14

            b.  There are Common Questions of Law and Fact....................14

            c.  The Proposed Class Representative's Claims Are Typical ..................15

2.      Lead Plaintiff Will Fairly and Adequately Protect the Settlement Class ........................................................................................................16

3.      The Proposed Settlement Class Satisfies Rule 23(b)(3) ...........................16

        a.   Common Questions of Law or Fact Predominate .................................17

        b.   A Class Action Is Superior Method of Adjudication...........................18

IV.     CONCLUSION......................................................................................................18

# TABLE OF AUTHORITIES

**PAGES**

### Cases

*Adamson v. Bowen*,
    855 F.2d 668 (10th Cir. 1988) ........................................................................... 15

*Affiliated Ute Citizens of Utah v. United States*,
    406 U.S. 128 (1972) ........................................................................................... 18

*Amchem Prods., Inc. v. Windsor*,
    521 U.S. 591 (1997) ..................................................................................... 17, 18

*Amgen Inc. v. Conn. Ret. Plans & Trust Funds*,
    133 S. Ct. 1184 (2013) ...................................................................................... 17

*Anderson v. First Sec. Corp.*,
    249 F. Supp. 2d 1256 (D. Utah 2002) ................................................................. 8

*Baker v. Comprehensive Employee Solutions*,
    227 F.R.D. 354 (D. Utah 2005) ............................................................. 14, 15, 16

*Banks v. Central  Refrigerated Servs.*,
    No. 2:16-CV-356-DAK, 2017 U.S.  Dist.
    LEXIS 67423 (D. Utah May 2, 2017) ................................................................ 14

*Basic Inc. v. Levinson*,
    485 U.S. 224 (1988) ..................................................................................... 17, 18

*Bennett v. Sprint Nextel Corp.*,
    298 F.R.D. 498 (D. Kan. 2014) .................................................................... 14, 17

*Caprin v. Simon Transportation. Servs.*,
    112 F. Supp. 2d 1251 (D. Utah 2000) ................................................................. 8

*City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*,
    65 F. Supp. 3d 840 (N.D. Cal. 2014) .................................................................. 8

*D'Amato v. Deutsche Bank*,
    236 F.3d 78 (2d Cir. 2001) ................................................................................ 11

*DeJulius v. New England Health Care Employees Pension Fund*,
    429 F.3d 935 (10th Cir. 2005) ........................................................................... 12

*Ditty v. Check Rite, Ltd.*,
    182 F.R.D. 639 (D. Utah 1998) ........................................................................ 14

*Gottlieb v. Wiles*,
    11 F.3d 1004 (10th Cir. 1993) ........................................................................ 9

*Halliburton Co. v. Erica P. John Fund, Inc.*,
    134 S. Ct. 2398 (2014) ........................................................................... 17, 18

*Harper v. C.R. England, Inc.*,
    Case No. 2:16-cv-906-DB, 2016 U.S. Dist.
    LEXIS 171496 (D. Utah December 12, 2016) ................................................. 6

*Hicks v. Morgan Stanley & Co.*,
    No. 01 Civ. 10071 (RJH), 2005 U.S. Dist.
    LEXIS 24890 (S.D.N.Y. Oct. 19, 2005) ...................................................... 10

*In re Crocs, Inc. Sec. Litig.*,
    306 F.R.D. 672 (D. Colo. 2014) .......................................................... 7, 8, 16

*In re Intelcom Group Sec. Litig.*,
    169 F.R.D. 142 (D. Colo. 1996) .................................................................. 18

*In re Nature's Sunshine Product's Inc. Sec. Litig.*,
    251 F.R.D. 656 (D. Utah 2008) ................................................................... 18

*In re Qwest Commc'ns Int'l, Inc. Sec. Litig.*,
    625 F. Supp. 2d 1133 (D. Colo. 2009) ......................................................... 7, 8

*In re Rambus Inc. Derivative Litig.*,
    No. C 06-3513 JF (HRL), 2009 U.S. Dist.
    LEXIS 131845 (N.D. Cal. Jan. 20, 2009) .................................................... 11

*In re Sprint Corp. ERISA Litig.*,
    443 F. Supp. 2d 1249 (D. Kan. 2006) ........................................................... 9

*In re Urethane Antitrust Litig.*,
    251 F.R.D. 629 (D. Kan. 2008) .................................................................... 15

*Jones v. Nuclear Pharmacy, Inc.*,
    741 F.2d 322 (10th Cir. 1984) ...................................................................... 6

*Kapur v. USANA Health Sciences, Inc.*,
    No. 2:07-CV-00177DAK, 2008 U.S. Dist.
    LEXIS 58955 (D. Utah July 23, 2008) .......................................................... 8

*Karacand v.Edwards*,
    53 F. Supp. 2d 1236 (D. Utah 1999) ............................................................... 8

*Lucas v. Kmart Corp.*,
    No. 99-cv-01923-JLK, 2006 U.S. Dist.
    51439 (D. Colo. July 27, 2006) ........................................................ 6, 7, 10, 11

*Miller v. Basic Research, LLC*,
    285 F.R.D. 647 (D. Utah 2010) ................................................................ 14, 17

*Mullane v. Cent. Hanover Bank & Trust Co.*,
    339 U.S. 306 (1950) .................................................................................... 12

*New England Health Care Employees Pension Fund v. Woodruff*,
    520 F.3d 1255 (10th Cir. 2008) ....................................................................... 6

*Redwen v. Sino Clean Energy, Inc.*,
    No. CV 11-3936 PA (SSx), 2013 U.S. Dist.
    LEXIS 100275 (C.D. Cal. July 9, 2013) ......................................................... 11

*Rutter & Wilbanks Corp. v. Shell Oil Co.*,
    314 F.3d 1180 (10th Cir. 2002) .................................................................. 6, 16

*Ryskamp v. Looney*,
    No. 10-cv-00842-WJM-KLM, 2012 U.S. Dist.
    LEXIS 114190 (D. Colo. Aug. 14, 2012) ......................................................... 11

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
    396 F.3d 96 (2d Cir. 2005) ............................................................................ 11

## Statutes

15 U.S.C.
    §78u-4(a)(7)(A)-(F) ...................................................................................... 13

## Rules

Fed. R. Civ. P.
    23(b)(3) ....................................................................................................... 17

    23(c)(2) ....................................................................................................... 12

    23(g)(1)(A) ................................................................................................... 16

**Other**

Laarni T. Bulan, et al.,
   *Securities Class Action Settlements - 2017 Review and Analsysis*
   (Cornerstone Research 2017) ................................................................................................ 13

## RELIEF SOUGHT AND GROUNDS THEREFOR

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, Lead Plaintiff The New York Hotel Trades Council and Hotel Association of New York City, Inc. Pension Fund ("Lead Plaintiff") on behalf of itself, and the Settlement Class,[1] by and through its counsel Wolf Haldenstein Adler Freeman & Herz LLP ("Lead Counsel"), respectfully submits this memorandum of law in support of its motion for an order: (i) finally approving the proposed settlement of the above-captioned action ("Action"), which this Court preliminarily approved on July 9, 2018 (ECF No. 85); (ii) finally approving the proposed plan for allocating the settlement proceeds to the Settlement Class (the "Plan of Allocation"); (iii) finally approving the method of providing notice to the Settlement Class; and (iv) finally certifying the Class for settlement purposes.

## I.      INTRODUCTION

The $6.25 million cash settlement ("Settlement Amount") that Lead Plaintiff obtained for the benefit of the Settlement Class is an excellent result and merits this Court's approval.  Prior to entering into the Settlement Agreement, the parties thoroughly weighed the strengths and weaknesses of the claims and defenses, as well as the Action's procedural posture. The Settlement is the product of Lead Plaintiff's and Lead Counsel's diligent efforts in prosecuting this Action, and hard-fought, arm's-length settlement negotiations before Jed D. Melnick, Esq. of JAMS, who has successfully settled many complex securities class actions.

According to damages experts retained by Lead Counsel, the $6.25 million settlement represents approximately 6% of the maximum potential recovery Settlement Class Members could have achieved at trial, provided the claims survived the Motion to Dismiss and a motion

---

[1]      All capitalized terms that are not otherwise defined herein shall have the same meaning as those provided in the Stipulation and Agreement of Settlement, dated July 2, 2018 (the "Stipulation" or the "Settlement"), filed as Exhibit 1 to the Declaration of Betsy C. Manifold in Support of Lead Plaintiff's Unopposed Motion Preliminarily Approving Class Action Settlement, Approving Form and Manner of Notice, and Setting Date for Hearing on Final Approval of Settlement.   ECF No. 82-1.

for summary judgment, the Class was certified, and Defendants'[2] anticipated challenges to the methodology of Lead Plaintiff's damages expert were unsuccessful.  This recovery falls squarely within the median range of recoveries in securities class action settlements of this type.

Additionally, Lead Counsel, who are highly experienced in prosecuting securities class action litigation, have concluded that the Settlement is in the best interests of the Settlement Class and recommend its approval to the Court.  Accordingly, Lead Plaintiff respectfully submits that this Court should approve the Settlement.

## II.     BACKGROUND

### A.     The Action

This Action arises out of Defendants' alleged failure to timely record two separate goodwill impairment charges in the Company's Outdoor Product segment, which totaled over $600 million. The Second Amended Complaint ("Complaint") alleged federal securities claims on behalf of persons and entities that acquired Vista's securities between August 11, 2016 and November 9, 2017, inclusive.  It was filed in the United States District Court for the District of Utah (the "Court"), and is captioned *Lentsch v. Vista Outdoor Inc., et al.*, No. 1:17-cv-00012-DAK-EJF.  The Complaint alleged that some or all of the Defendants violated Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") by failing to make required disclosures about Vista's operations and financial results, including the January 2017 and November 2017 write-offs of recorded goodwill in Vista's Outdoor Product segment.  The Complaint also alleged, *inter alia,* that as a result of Defendants' purported actions, Lead Plaintiff and members of the Class suffered harm and requested that the Court grant compensatory damages, costs, expenses and other appropriate relief for such alleged harm. Declaration of Betsy C. Manifold in Support of Lead Plaintiff's Motion for Final Approval of Class Action Settlement, Plan of Allocation and Certification of Settlement Class; and

---

[2]      "Defendants" refers collectively to Vista Outdoor Inc. ("Vista" or the "Company"), Mark W. DeYoung, Stephen M. Nolan and Kelly T. Grindle.

Application for Award of Attorneys' Fees, Reimbursement of Expenses and Service Award to Lead Plaintiff ("Manifold Decl."), ¶ 19 (filed concurrently herewith).

On February 22, 2018, Defendants filed a Motion to Dismiss the Complaint for failure to state a claim upon which relief could be granted and argued that Lead Plaintiff failed to plead any materially false or misleading statement or omission or scienter.  *Id.*, ¶ 20. Defendants argued that statements of goodwill are opinions, not fact, and only actionable if shown to be subjectively and objectively false and that the Complaint failed to identify sufficient facts to meet this difficult standard.  On March 26, 2018, Lead Plaintiff filed an opposition to Defendants' Motion to Dismiss and argued that it adequately alleged a claim under both Sections 10(b) and 20(a) of the Securities Exchange Act of 1934. Oral argument was scheduled for June 12, 2018.  *Id*.

### B.     Negotiations

On April 13, 2018, before briefing on Defendants' Motion to Dismiss was complete, the Parties and their counsel engaged in a mediation with Jed D. Melnick, Esq. and after extensive facilitated negotiations at the mediation, the Parties reached an agreement in principle concerning a proposed settlement of the Action, and executed a Memorandum of Understanding ("MOU") on April 20, 2018.  The Parties subsequently negotiated and entered into a definitive Stipulation and Agreement of Settlement dated July 2, 2018 (the "Stipulation" or the "Settlement").  Manifold Decl., ¶¶ 21-22.

Lead Plaintiff believes that the claims asserted in the Action have merit.  However, Lead Plaintiff and Lead Counsel recognize and acknowledge the expense and length of continued proceedings necessary to prosecute the Action through trial and appeals.  Lead Plaintiff and Lead Counsel also have taken into account the uncertain outcome and the risk of any litigation, especially in complex litigation such as this Action, as well as the difficulties and delays inherent in such litigation, including the inherent problems of proof.  Lead Counsel also is aware of the possible defenses to the claims alleged in the Action.  Based on their evaluation, Lead Plaintiff and Lead Counsel believe that the Settlement set forth in the Stipulation confers substantial

monetary benefits upon the Settlement Class and is in the best interests of Lead Plaintiff and the Settlement Class.

### C.  The Settlement

The Stipulation provides that "Lead Plaintiff and Releasing Persons . . . with respect to each and every Settled Claim, waive, release, forever discharge and dismiss, with prejudice, and agree not to institute, maintain or prosecute any or all Settled Claims against any or all of the Released Persons . . . . "  Stipulation § 3(a).  The Settled Claims are to be settled for a total of $6.25 million in cash, which includes all attorneys' fees and expenses, and all costs related to the Class and Settlement administration.  *Id.* § 1.42.  The Stipulation further provides that Lead Counsel intend to request attorneys' fees, plus reimbursement of litigation costs and expenses.  *Id.* § 6.  The Claims Administrator will determine the *pro rata* share of the Net Settlement Fund based upon the Plan of Allocation proposed by Lead Counsel and Approved by the Court.  *Id.* § 11.

### D.  The Notice of Settlement

In accordance with this Court's Preliminary Approval Order, Lead Plaintiff retained Garden City Group ("GCG") as the Claims Administrator.  As set forth in the Declaration of Stephanie Amin-Giwner Regarding Mailing of Notice of Pendency of Class Action and Proposed Settlement, Motion for Attorneys' Fees and Settlement Fairness Hearing, Publication, Requests for Exclusion, and Objections to the Settlement Received to Date ("GCG Decl.") (filed concurrently herewith), GCG has scrupulously followed the court-approved notice procedure set forth in the Preliminary Approval Order.  *See* ECF No. 85 at 8-11.

On July 10, 2018, Lead Counsel provided GCG with data they received from Defendants' Counsel which contained the names and last known addresses for 4,425 record holders of Vista securities during the Class Period.  GCG Decl., ¶ 3.  GCG removed duplicates and on July 27, 2018, mailed copies of the Notice and Proof of Claim ("Notice Packet") to 4,321 record holders.  *Id.* & Ex. A.

Additionally, because a large majority of potential Settlement Class Members are

beneficial purchasers whose securities are held in "street name," the securities are purchased by brokerage firms, banks, institutions, and or other third-party nominees in the name of the nominee, on behalf of the beneficial purchasers. *Id*., ¶ 4. GCG therefore maintains a proprietary database with the names and addresses of the largest and most common U.S. banks, brokerage firms, and nominees, including national and regional offices of certain nominees (the "Nominee Database"). *Id*. At the time of the initial mailing, the Nominee Database contained 1,754 mailing records. On July 27, 2018, GCG mailed by first-class mail, postage prepaid, a Notice Packet to the 1,754 brokers and financial institutions in GCG's Nominee Database. *Id*.

Following the initial mailing, GCG received additional names and addresses of potential Settlement Class Members from nominee purchasers and others. GCG promptly sent, and continues to promptly send, a Notice Packet to each such name and address. In addition, during this same time period, GCG received requests from nominee purchasers for Notice Packets to be forwarded by the nominee holders to potential Settlement Class Members. GCG promptly provided the requested Claim Packets to the nominee purchasers. *Id*., ¶ 5.

In the aggregate, as of September 25, 2018, GCG has mailed 37,627 Notice Packets to Settlement Class Members and nominees by first-class mail, postage prepaid. This includes 6 Notice Packets that were remailed due to updated addresses provided by the U.S. Postal Service. *Id*., ¶ 6.

Also, in accordance with this Court's Preliminary Approval Order, on July 30, 2018, the Summary Notice was published in the *Investor's Business Daily* and issued over *PR Newswire*. *Id*., ¶ 7 & Exs. B and C. GCG also maintained a website dedicated to the settlement. The website contained important information such as the exclusion and objection deadlines as well as important documents such as the Complaint, Stipulation, Preliminary Approval Order, Notice and Proof of Claim. *Id*., ¶ 8.

As of September 25, 2018, GCG has only received one request for exclusion for 500 shares and Plaintiffs' Counsel has not received any objections. *Id*., ¶ 12 & Ex. D; Manifold

Decl., ¶¶ 10, 37.  The deadline for filing objections is October 10, 2018.

### III.    ARGUMENT

####     A.    The Court Should Grant Final Approval of the Proposed Settlement

#####         1.    The Standard for Final Approval

"Public policy strongly favor[s] the pretrial settlement of class action lawsuits . . . ."  *New England Health Care Employees Pension Fund v. Woodruff*, 520 F.3d 1255, 1258 (10th Cir. 2008) (quotations omitted).   Approval of a proposed settlement is within the sound discretion of the Court.  *See Rutter & Wilbanks Corp. v. Shell Oil Co*., 314 F.3d 1180, 1187 (10th Cir. 2002).   A class action settlement is entitled to approval under Rule 23(e) if it is fair, reasonable and adequate.  *Id*. at 1188.  Courts in the Tenth Circuit consider the following four factors in assessing whether a proposed settlement is fair, reasonable and adequate:

> (1)    whether the proposed settlement was fairly and honestly negotiated;
>
> (2)    whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt;
>
> (3)    whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and
>
> (4)    the judgment of the parties that the settlement is fair and reasonable.

*Id.*; *Harper v. C.R. England, Inc*., Case No. 2:16-cv-906-DB, 2016 U.S. Dist. LEXIS 171496, at *7-8 (D. Utah Dec. 12, 2016); *Jones v. Nuclear Pharmacy, Inc.*, 741 F.2d 322, 324 (10th Cir. 1984).  This Settlement satisfies each of these four factors.

#####         2.    The Settlement Was Fairly and Honestly Negotiated

Where a settlement results from arm's-length negotiations between experienced counsel, "the Court may presume the settlement to be fair, adequate, and reasonable."  *Lucas v. Kmart Corp.*, No. 99-cv-01923-JLK, 2006 U.S. Dist. LEXIS 51439, at *22 (D. Colo. July 27, 2006).  The proposed Settlement was the result of arm's-length negotiations between highly experienced counsel with the assistance of an experienced mediator, Jed D. Melnick, Esq. of JAMS, who has successfully settled many complex securities class actions.  Manifold Decl., ¶¶ 6, 21.   Lead Counsel are particularly experienced in complex class action litigation and have served as lead

counsel in complex class actions for nearly five decades.  *See* Manifold Decl., ¶ 45 & Ex. 1 (Wolf Haldenstein firm resume).  Lead Counsel zealously represented their clients in litigating the Motion to Dismiss and at mediation.

In negotiating this Settlement in particular, Lead Counsel conducted a thorough investigation and analysis of Plaintiffs' claims, utilized the expertise of an in-house financial analyst, and engaged both accounting and damage experts, which enabled them to gain an understanding of the central questions in this action and prepared them for well-informed settlement negotiations.  Manifold Decl., ¶¶ 7, 11, 38.  Lead Counsel were also well-positioned to evaluate the appropriate basis upon which to settle the claims as a result of their analysis, described below, of completed settlements in similar cases.

The parties engaged in extensive negotiations until eventually agreeing in principle to the Settlement, then worked to memorialize the terms of the Settlement, first in the MOU and then in the Stipulation.  Manifold Decl., ¶ 22.  Indeed, the fact that the Settlement was reached under the supervision of an experienced mediator with considerable knowledge and expertise in the field of securities laws demonstrates honest negotiations between the Parties.  *See In re Crocs, Inc. Sec. Litig.,* 306 F.R.D. 672, 690 (D. Colo. 2014).  Accordingly, the Settlement is a product of informed, fair and honest negotiations among experienced counsel and merits final approval.

### 3. Serious Questions of Fact and Law Exist

Any settlement requires the parties to balance the merits of claims and defenses asserted against the attendant risks of continued litigation and delay.  Lead Plaintiff believes that the claims asserted in the Complaint are meritorious and Lead Plaintiff could prevail on the Motion to Dismiss, and ultimately at trial.  However, continuing the Action poses significant risks and additional costs.  The Parties have "reasonably conclude[d] that there are serious questions of law and fact that . . . could significantly impact" the case, and thus, settlement is a favorable alternative to continued litigation.  *Lucas*, 2006 U.S. Dist. LEXIS 51439, at *23; *see also In re Qwest Commc'ns Int'l, Inc. Sec. Litig.*, 625 F. Supp. 2d 1133, 1138 (D. Colo. 2009) ("doubt augurs in favor of settlement because settlement creates a certainty of some recovery . . . .").

Lead Plaintiff and Lead Counsel are confident in the strength of their case but are also pragmatic in their awareness of the pleading requirements under the Private Securities Litigation Reform Act of 1995 ("PSLRA"), various legal arguments available to Defendants, and risks inherent in continued litigation. The risk of material adverse findings against the Class is not insignificant. When the Parties reached an agreement, the Court had not yet decided Defendants' Motion to Dismiss the Complaint nor had it certified a Class. How the Court would rule on the Motion to Dismiss and class certification is unknown but there certainly is a risk that Plaintiff would lose one or both motions. [3]

For example, while Lead Plaintiff believes it could successfully establish all the elements of the securities fraud claims, scienter presents complex issues of proof for the Class. *See In re Qwest Commc'ns*, 625 F. Supp. 2d at 1138 ("The accounting issues, the scienter issues, the causation issues, and the damages issues all are complex and problematic. Presenting these issues to a jury would create substantial risks for all parties, including the plaintiffs."); *see also See In re Crocs, Inc. Sec. Litig.,* 306 F.R.D. at 691 (finally approving settlement after noting the risks plaintiffs would face in certifying a class, surviving summary judgment and winning at trial).

In their Motion to Dismiss, Defendants argued that the Company's statements related to goodwill are statements of pure opinion, not fact, and must be both subjectively and objectively false. The parties' briefing on the Defendants' Motion to Dismiss revealed sharply opposed positions on several fundamental legal questions, including whether the Complaint was sufficiently specific, whether statements of goodwill are statements of fact or opinion or a

---

[3]       *See, e.g., Anderson v. First Sec. Corp.*, 249 F. Supp. 2d 1256, 1273 (D. Utah 2002) (dismissing securities class action complaint with prejudice); *Kapur v. USANA Health Sciences, Inc.*, No. 2:07-CV-00177DAK, 2008 U.S. Dist. LEXIS 58955, at *51 (D. Utah July 23, 2008) (same); *Karacand v. Edwards*, 53 F. Supp. 2d 1236, 1253 (D. Utah 1999) (same); *Caprin v. Simon Transp. Servs.*, 112 F. Supp. 2d 1251, 1260 (D. Utah 2000) (same); *City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*, 65 F. Supp. 3d 840, 863 (N.D. Cal. 2014) (dismissing class action complaint that alleged defendants failed to timely record impairment to goodwill).

mixture of both, and the pleading standard to be applied.  Defendants have argued, and would continue to argue, that Vista management believed, at all times, its statements during the Class Period with respect to goodwill and other matters.

Defendants believed that their Motion to Dismiss would be granted with prejudice while Lead Plaintiff believed that its allegations as a whole were adequately pleaded.  Under the circumstances, Lead Counsel have appropriately determined that the benefits of settlement outweigh the gamble of continued litigation.

### 4.      The Value of a Guaranteed Recovery Outweighs the Possibility of Relief after Protracted and Expensive Litigation

The monetary value of the settlement must be compared to "'the possibility of some greater relief at a later time, taking into consideration the additional risks and costs that go hand in hand with protracted litigation.'"  *In re Sprint Corp. ERISA Litig.,* 443 F. Supp. 2d 1249, 1261 (D. Kan. 2006) (quoting *Gottlieb v. Wiles*, 11 F.3d 1004, 1015 (10th Cir. 1993)).  The Settlement has a present value of $6.25 million to the Settlement Class.  According to damages experts retained by Lead Counsel, the immediate recovery provided by the Settlement is roughly 6% of the maximum potential recovery Settlement Class Members could have achieved at trial, provided the claims survived the Motion to Dismiss and a motion for summary judgment, the Class was certified, and Defendants' anticipated challenges to the methodology of Lead Plaintiff's damages expert were unsuccessful.  Manifold Decl., ¶ 29.  This guaranteed recovery is an excellent result when considering those substantial inherent risks in this litigation, including a real risk of no recovery, and delay that would necessarily occur from protracted litigation.

The range of reasonableness of the Settlement Amount in light of the best possible recovery and the attendant risks of litigation supports approval of the Settlement.  The $6.25 million Settlement Amount that recovers roughly 6% of the maximum potential recovery Settlement Class Members could have achieved at trial is comparable to other securities class action settlements.  For example, as reported by Cornerstone Research, the median settlement in 2017 for securities class actions where the simplified tier damages were between $75-$149

million was 3.2%.[4]  *See, e.g., Hicks v. Morgan Stanley & Co.*, No. 01 Civ. 10071 (RJH), 2005 U.S. Dist. LEXIS 24890, at *19 (S.D.N.Y. Oct. 19, 2005) (settlement providing 3.8% recovery of Plaintiffs' damage estimate is within the range of reasonableness for post-PSLRA securities class action settlements).  Accordingly, the Settlement is reasonable in comparison to similar settlements.

### 5.      The Parties Believe that the Proposed Settlement is Fair, Adequate, and Reasonable

Lead Counsel and Defendants reached this settlement after arm's-length negotiations and believe that it represents a good outcome for all Parties.  *See* Manifold Decl., ¶¶ 6, 8.  Defendants will obtain a release of all claims asserted in the Complaint and will avoid the expense, burden and uncertainty associated with further proceedings.  Similarly, Lead Plaintiff and the Settlement Class are guaranteed monetary recovery and avoid the possibility of losing the Motion to Dismiss, class certification, summary judgment, or at trial.  Lead Plaintiff and Lead Counsel have concluded that the Settlement is in the best interest of the Settlement Class and recommend its approval.  This conclusion is based on, among other things, the experience of counsel and a thorough and careful review and analysis of the strengths and weaknesses of the claims and defenses.  Against this background, counsel's opinion "is entitled to considerable weight" and supports approval of the settlement.  *See Lucas*, 2006 U.S. Dist. LEXIS 51439, at *27 (quotations omitted).

### 6.      The Reaction of Class Members Supports the Settlement

In addition to the factors referenced above that this Court already considered in preliminarily approving the Settlement, on motion for final approval, the Court weighs the reaction of the class members to the proposed settlement after the class members have received notice and been informed of their opportunity to object.  *See Ryskamp v. Looney*, No. 10-cv-

---

[4]      Laarni T. Bulan, et al., *Securities Class Action Settlements - 2017 Review and Analysis* 8 (Cornerstone Research 2017), available at http://securities.stanford.edu/research-reports/1996-2017/Settlements-Through-12-2017-Review.pdf (last visited Sept. 24, 2018).

00842-WJM-KLM, 2012 U.S. Dist. LEXIS 114190, at *12 (D. Colo. Aug. 14, 2012) ("'The reaction of the class to the proffered settlement . . . is perhaps the most significant factor to be weighed in considering its adequacy . . . .'") (quoting *In re Rambus Inc. Derivative Litig.*, No. C 06-3513 JF (HRL), 2009 U.S. Dist. LEXIS 131845, at *10 (N.D. Cal. Jan. 20, 2009)); *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 118 (2d Cir. 2005) ("If only a small number of objections are received, that fact can be viewed as indicative of the adequacy of the settlement.") (quotations omitted).

Pursuant to the Notice, Class Members were informed that objections were due on October 10, 2018.  To date, no objections have been filed.  Manifold Decl., ¶ 37.  Additionally, GCG has only received one request for exclusion.  GCG Decl., ¶ 12.  Thus, the Class' reaction militates in favor of final approval.  *See Wal-Mart Stores, Inc.*, 396 F.3d at 118; *D'Amato v. Deutsche Bank*, 236 F.3d 78, 86-87 (2d Cir. 2001) (where 27,883 notices were sent to class members, but only 72 class members requested exclusion from the settlement and only 18 class members objected, court stated that "this  small number of objections weigh[s] in favor of the settlement").

**B.     The Court Should Approve the Plan of Allocation**

The standard for approval of a plan of allocation is the same as the standard for approving a settlement: whether it is "fair, reasonable, and adequate."  *Lucas*, 2006 U.S. Dist. LEXIS 51439, at *28.  "An allocation formula need only have a reasonable, rational basis, particularly if recommended by experienced and competent class counsel."  *Id.* at *29 (quotations omitted).  Additionally, "a plan of allocation . . . fairly treats class members by awarding a pro rata share to every Authorized Claimant, even as it sensibly makes interclass distinctions based upon, inter alia, the relative strengths and weaknesses of class members' individual claims and the timing of purchases of the securities at issue."  *Redwen v. Sino Clean Energy, Inc.*, No. CV 11-3936 PA (SSx), 2013 U.S. Dist. LEXIS 100275, at *29 (C.D. Cal. July 9, 2013) (quotations omitted).

Lead Counsel prepared the Plan of Allocation after conferring with a financial analyst and damages consultant and carefully developed a plan that reflects an assessment of the

- 11 -

damages that Lead Counsel believes Class Members could have recovered had Lead Plaintiff prevailed at trial.  Manifold Decl., ¶ 38.  The Plan of Allocation reflects the allegations that the price of Vista's securities were artificially inflated during the Class Period due to alleged misrepresentations and/or omissions by Defendants.  A Class Member's actual recovery will depend on several things, including: (1) the number of claims filed; (2) when, in what quantities and for how much Class Members purchased and/or acquired Vista securities during the Class Period; and (3) whether Class Members sold Vista securities and, if so, when and for how much.[5] If the sum total of the Recognized Losses, of all Authorized Claimants who are entitled to receive payment out of the Net Settlement Fund is greater than the Net Settlement Fund, each Authorized Claimant will receive his, her or its pro rata share of the Net Settlement Fund. Manifold Decl., ¶¶ 40, 42.  As of September 25, 2018, not a single Class Member has objected to the Plan of Allocation.  Manifold Decl., ¶ 43.  Accordingly, Lead Plaintiff and its counsel believe that this method of allocation has a reasonable and rational basis; is fair, reasonable and adequate; and therefore warrants the Court's approval.

### C.    The Notice Program Meets the Applicable Requirements

The Notice program complied with the requirements of the PSLRA, due process, and Rule 23.  Rule 23(c)(2) requires notice of the pendency of the class action to be "the best notice that is practicable under the circumstances."  Fed. R. Civ. P. 23(c)(2).  To satisfy due process, notice must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *DeJulius v. New Eng. Health Care Employees Pension Fund,* 429 F.3d 935, 944 (10th Cir. 2005) (quoting *Mullane v. Cent. Hanover Bank & Trust Co.,* 339 U.S. 306, 314 (1950)).

Pursuant to the Preliminary Approval Order, on July 27, 2018, GCG mailed the Notice

---

[5]    On September 18, 2018, Plaintiffs' Counsel discovered that the Recognized Loss Formula did not include a calculation for Class Members who continued to hold their shares through the 90-day look back period.  Accordingly, on September 25, 2018, GCG updated the settlement website and provided Class Members with this information.  Manifold Decl., ¶ 41 n.2; GCG Decl., ¶ 9.

Packet to 6,075 potential Settlement Class Members.  GCG Decl., ¶ 4.  Following the initial mailing, GCG received additional names and addresses of potential Class Members and in the aggregate, mailed a total of 37,627 Notice Packets.  *Id*. at ¶ 6.  Additionally, on July 30, 2018, the Summary Notice was published in the *Investor's Business Daily* and issued over *PR Newswire*.  *Id*., ¶ 7 & Exs. B and C.

The Notice mailed to Settlement Class Members provided a detailed background and history of the Action, fully apprised Settlement Class Members of the terms of the Settlement, and informed them of the options available to them in connection with the proceedings, including their right to personally appear and/or object to any aspect of the relief requested or to seek exclusion from the Settlement Class.  The Notice also satisfied the PSLRA's separate disclosure requirements by, *inter alia,* stating*:* (i) the amount of the Settlement determined in the aggregate and on an average per share basis; (ii) that the Parties do not agree on the average amount of damages per share that would be recoverable; (iii) that Lead Counsel intend to make an application for attorneys' fees and expenses (including the amount of such fees and expenses on an average per share basis); (iv) the name, telephone number, and address of Lead Counsel; and (v) the reasons why the Parties are proposing the Settlement.  15 U.S.C. § 78u-4(a)(7)(A)-(F).  Additionally, the Complaint, Stipulation, Preliminary Approval Order, Notice, and Proof of Claim were made available for viewing and downloading on the settlement website.  GCG Decl., ¶ 8.  For all these reasons, the approved Notice program complied with the requirements of the PSLRA, due process, and Rule 23 and should therefore be approved.

### D.   The Settlement Class Satisfies the Requirements of Rule 23

Lead Plaintiff also seeks final certification of the Settlement Class, appointment as class representative and appointment of Wolf Haldenstein Adler Freeman & Herz LLP as Class Counsel.  The Court preliminarily certified the Settlement Class on July 9, 2018 and nothing has changed to alter the propriety of that determination.  ECF No. 85.

The proposed Settlement Class should be finally certified as it satisfies the numerosity, commonality, typicality and adequacy requirements of Rule 23(a)(1)-(4) and the predominance and superiority requirements of Rule 23(b)(3).  For the reasons set forth below, the requirements of Federal Rule of Civil Procedure 23 are satisfied, and certification of the proposed Settlement Class is appropriate:

<blockquote>

**1.      The Proposed Settlement Class Meets the Requirements of Rule 23(a)**

</blockquote>

<blockquote>

**a.      The Settlement Class is Sufficiently Numerous**

</blockquote>

Classes numbering in the hundreds easily meet the numerosity requirement of Rule 23(a)(1). *See Baker v. Comprehensive Emp. Solutions,* 227 F.R.D. 354, 359 (D. Utah 2005) ("Plaintiffs meet the requirement of numerosity by alleging in their Complaint that the proposed class would include hundreds of participants and beneficiaries.").  "To satisfy this requirement, [Plaintiff] need not show that joinder of all members is impossible, only that it is impracticable." *Ditty v. Check Rite, Ltd.*, 182 F.R.D. 639, 641 (D. Utah 1998); Fed. R. Civ. P. 23(a)(1) ("so numerous that joinder of all members is impracticable"). A plaintiff is not required to prove the actual size of the class, and the court may rely on common sense assumptions in evaluating numerosity. *Banks v. Cent.  Refrigerated Servs*., No. 2:16-CV-356-DAK, 2017 U.S. Dist. LEXIS 67423, at *20 (D. Utah May 2, 2017).  During the Class Period, Vista had an average of about 60 million shares of common stock outstanding that traded on the New York Stock Exchange. *See* ECF No. 62 (Complaint) at ¶ 216.  Additionally, GCG mailed a total of 37,627 Notice Packets to potential Class Members.  GCG Decl., ¶ 6. Thus, the numerosity requirement is met.

<blockquote>

**b.      There Are Common Questions of Law and Fact**

</blockquote>

"Rule 23(a)(2) requires Plaintiffs to show that questions of law or fact are common to the class, that is, members of the putative class possess the same interest and suffer the same injury." *Bennett v. Sprint Nextel Corp*., 298 F.R.D. 498, 505 (D. Kan. 2014) (quotations omitted).  The threshold for commonality is not high.  "Commonality requires only one question of law or fact common to the entire class."  *Miller v. Basic Research, LLC*, 285 F.R.D. 647, 656 (D. Utah.

- 14 -

2010).  Commonality exists so long as "the remedies the class seeks . . . do not depend on the individual facts of each case, but apply equally to all cases pending within the class." *Adamson v. Bowen*, 855 F.2d 668, 676 (10th Cir. 1988). "That the claims of individual class members may differ factually should not preclude certification . . . ." *Id.*

Here, the commonality requirement is readily satisfied.  Common questions of law and fact include, *inter alia*:  (i) whether Defendants' publicly disseminated statements during the Class Period omitted and/or misrepresented material facts; (ii) whether Defendants acted with scienter; and (iii) whether the price of Vista securities were artificially inflated during the Class Period causing damages.  Because Lead Plaintiff alleges that Defendants have injured all Settlement Class Members in the same way, and the Settlement provides common resolution to common questions raised by the claims, Rule 23(a)(2) is satisfied.

### c.    The Proposed Class Representative's Claims Are Typical

For claims to be typical, the class representative must be a part of the class and possess the same interest and suffer the same injury as class members.  *See In re Urethane Antitrust Litig.,* 251 F.R.D. 629, 640 (D. Kan. 2008).  The facts surrounding all claims need not be identical, but the claims of the class representative and the class must be "based on the same legal or remedial theory."  *Adamson,* 855 F.2d at 676.  *See also Baker*, 227 F.R.D. at 359 (finding typicality requirements met where the "thrust of Plaintiffs' argument is that they have suffered the same harm as that suffered by others in the class").  Here, Lead Plaintiff's claims are virtually indistinguishable from those of the Settlement Class.  Lead Plaintiff, like all Settlement Class Members, asserts claims that concern the same statements alleged to be false and misleading, arise from the same legal theories, and allege the same type of harm and entitlement to relief, *i.e.*, sustained damages when it purchased Vista securities at inflated prices during the Class Period.  Lead Plaintiff's claims are therefore typical of the Settlement Class it seeks to represent.

### 2. Lead Plaintiff Will Fairly and Adequately Protect the Settlement Class

Both the Lead Plaintiff and the Lead Counsel: (a) must not have impermissible conflicts of interest with the Settlement Class; and (b) must vigorously prosecute the action for the Settlement Class to meet the adequacy requirement. *See Rutter,* 314 F.3d at 1187-88. "Adequate representation depends on, among other factors, an absence of antagonism between the representatives and absentees, and a sharing of interest between representatives and absentees." *In re Crocs, Inc. Sec. Litig*., 306 F.R.D. at 688.

Here, Lead Plaintiff's interests are fully aligned with those of the Settlment Class Members. There are no actual or potential conflicts of interest. Furthermore, Lead Plaintiff has actively supervised this litigation, taking all the steps necessary to ensure that it fulfills its fiduciary obligations to the Settlement Class.

Lead Counsel is qualified, experienced, and able to conduct this litigation and is likewise adequate. Indeed, Lead Counsel is a nationally recognized firm that has both successfully litigated numerous securities fraud and complex class action cases and has dedicated substantial resources to the prosecution of this action.[6] Manifold Decl., ¶ 45 & Ex. 1 (Firm Resume). Plaintiffs and Class Counsel have vigorously and competently represented the Settlement Class Members' interests in the action. *See Rutter*, 314 F.3d at 1188; *Baker*, 227 F.R.D. at 359 (adequacy met where counsel had "considerable experience" in underlying substantive claims and class actions).

### 3. The Proposed Settlement Class Satisfies Rule 23(b)(3)

Rule 23(b)(3) requires (i) that the "questions of law or fact common to class members predominate over any questions affecting only individual members" and (ii) that the class action mechanism must be "superior to other available methods for fairly and efficiently adjudicating

---

[6] *See* Fed. R. Civ. P. 23(g)(1)(A) (instructing that a court consider the work of counsel done in identifying or investigating potential claims in the action, counsel's experience in handling class actions and other complex litigation, counsel's knowledge of the applicable law and the resources counsel will commit to represent the class).

the controversy." Fed. R. Civ. P. 23(b)(3).   Those requirements are met here.   Under Rule 23(b)(3), "[c]ommon issues predominate when the focus is on the defendant's conduct and not on the conduct of the individual class members . . . . Predominance is usually present when the action is based on a common course of conduct on the part of defendant." *Miller*, 285 F.R.D. at 657 (quotations and citation omitted).

### a.   Common Questions of Law or Fact Predominate

The predominance inquiry "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997).   "Predominance is usually present when the action is based on a common course of conduct on the part of defendant." *Miller*, 285 F.R.D. at 657. Rule 23(b)(3) "does *not* require a plaintiff seeking class certification to prove that each 'elemen[t] of [their] claim [is] susceptible to classwide proof,'" just "that common questions '*predominate* over any questions affecting only individual [class] members.'" *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 568 U.S. 455, 469 (2013) (citation omitted).   "This requirement is often 'readily met in certain cases alleging consumer or securities fraud.'" *Bennett*, 298 F.R.D. at 506 (quoting *Amchem*, 521 U.S. at 625).

Here, common questions of law and fact predominate over individual questions because Defendants' alleged fraudulent statements and omissions affected all Settlement Class Members in the same manner (*i.e.*, through public statements made to the market and documents publicly filed with the SEC.)   Moreover, the application of the "fraud-on-the-market" presumption of reliance adopted in *Basic Inc. v. Levinson*, 485 U.S. 224, 241-42 (1988) establishes class-wide reliance in this Action.   Application of *Basic* dispenses with the requirement that each Settlement Class Member prove individual reliance on Defendants' alleged misstatements and/or omissions. *See id.* at 241-42.   The Supreme Court reaffirmed this presumption in *Halliburton Co. v. Erica P. John Fund, Inc.*, 134 S. Ct. 2398 (2014) and *Amgen*, 568 U.S. at 461-63.   This theory "holds that 'the market price of shares traded on well-developed markets reflects all publicly available information, and, hence, any material misrepresentations'" and that when an "investor buys or

sells stock at the market price, his 'reliance on any public material misrepresentations . . . may be presumed for purposes of a Rule 10b-5 action.'"  *Halliburton*, 134 S. Ct. at 2408 (quoting *Basic*, 485 U.S. at 246-47); *In re Nature's Sunshine Product's Inc. Sec. Litig.*, 251 F.R.D. 656, 661 (D. Utah 2008) (*Basic* "obviates the necessity that a plaintiff prove reliance" and "permits the rebuttable presumption that a plaintiff relied on the integrity of the market price in purchasing his or her shares of stock").[7]  In order for plaintiffs to be entitled to the *Basic* presumption of reliance, the market for the security must be "efficient."  *Basic*, 485 U.S. at 248.  Here, where Vista's securities are traded on the NYSE, a national securities exchange, there is sufficient evidence of market efficiency.

### b.  A Class Action Is Superior Method of Adjudication

A class action is superior where it serves the primary goals of Rule 23, namely, "economies of time, effort, and expense," without sacrificing fairness.  *See Amchem,* 521 U.S. at 615.  "[T]he superiority of class actions in large securities fraud [cases] is well recognized." *In re Intelcom Group Sec. Litig.*, 169 F.R.D. 142, 149 (D. Colo. 1996).

For these reasons, the Court should finally certify the Settlement Class.

## IV.  CONCLUSION

For the foregoing reasons, Lead Plaintiff respectfully requests that the Court finally certify the Settlement Class for settlement purposes, approve the Settlement and Plan of Allocation, and find that the notice program met all of the applicable requirements.

DATED:  September 26, 2018                WOLF HALDENSTEIN ADLER
                                           FREEMAN & HERZ LLP
                                          */s/ Betsy C. Manifold*
                                          BETSY C. MANIFOLD

---

[7]      The same presumption exists for Lead Plaintiff's allegations regarding Defendants' omissions.  In *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128, 153-54 (1972), the Supreme Court held that where a plaintiff alleges "a failure to disclose, positive proof of reliance is not a prerequisite to recovery.  All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in the making of this decision."

Betsy C. Manifold (admitted *pro hac vice*)
750 B Street, Suite 2770
San Diego, CA 92101
Telephone:      619/239-4599
Facsimile:      619/234-4599
manifold@whafh.com

WOLF HALDENSTEIN ADLER
   FREEMAN & HERZ LLP
Gregory M. Nespole (admitted *pro hac vice*)
Regina Calcaterra (admitted *pro hac vice*)
Corey Kamin (admitted *pro hac vice*)
Anita Kartalopoulos (admitted *pro hac vice*)
270 Madison Ave.
New York, NY  10016
Telephone:      212/545-4600
Facsimile:      212/545-4653
gmn@whafh.com
calcaterra@whafh.com
kamin@whafh.com
abk@whafh.com

ANDERSON & KARRENBERG, P.C.
Heather M. Sneddon (#9520)
Jared D. Scott (#15066)
50 W. Broadway, Suite 700
Salt Lake City, UT 84101-2035
Telephone:  801/534-1700
hsneddon@aklawfirm.com
jscott@aklawfirm.com


PITTA LLP
Vincent F. Pitta (admitted *pro hac vice*)
120 Broadway, 28th Floor
New York, NY 10271
Telephone:  212/652-3836
vpitta@pittalaw.com


Attorneys for Lead Plaintiff


VISTA:24910